### In re VERMONT INVESTMENT LIMITED PARTNERSHIP, Debtor.

**Bankruptcy No. 91–00320.**

United States Bankruptcy Court, District of Columbia.

July 6, 1992.

---

Stephen E. Leach, Tucker, Flyer & Lewis, Washington, D.C., for debtor.

## DECISION RE MOTION FOR RELIEF FROM AUTOMATIC STAY

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The debtor opposes the motion of Homefed Bank, F.S.B. for relief from the automatic stay by contending that the bank was required to apply post-petition receipts of rent collateral to reduce the principal of the bank's allowed secured claim. For rea-

sons developed below, the court rejects that contention.

### Facts

The debtor, Vermont Investment Limited Partnership, owns the Global Building, a twelve-story office building located at 1025 Vermont Avenue, N.W. in this district. The debtor filed its petition under chapter 11 of the Bankruptcy Code on March 18, 1991. The building is worth $19.1 million today and there is no evidence the value was more or less on the petition date. Homefed Bank, F.S.B. holds two notes, Note A and Note B, secured by a deed of trust against the debtor's building. The bank seeks relief from the automatic stay in order to commence foreclosure proceedings, urging that there is a lack of adequate protection (11 U.S.C. § 362(d)(1)) and that there is no equity in the property and the property is not necessary for an effective reorganization (§ 362(d)(2)).

The bank also holds an assignment of rents as security. By reason of a cash collateral order approved by the court on April 23, 1991, the assignment of rents has been treated as a perfected security interest in rents throughout this case.[1] The debtor was authorized to use the rents for operating expenses and was required each month to remit the balance to the bank for application to the indebtedness evidenced by the two promissory notes "in conformity with the terms thereof," except that the bank was to use such funds to pay any real estate taxes owed by the debtor that were to come due post-petition. Such sums paid for real estate taxes were to be secured by the bank's deed of trust. The order was not to constitute a finding with respect to

---

1. The Order Authorizing Limited Use of Cash Collateral was made effective March 18, 1991, the date of the filing of the debtor's petition. The order provided that—

> ... the rents ... are hereby declared to be cash collateral as defined in 11 U.S.C. § 363(a), subject to a security interest in the form of an Assignment of Rents and Leases ... recorded June 28, 1988....

The order further required sequestration of rents and then provided that—

> ... as further protection (but not necessarily adequate protection pursuant to 11 U.S.C. § 361) and [sic] *for the existing rights and*

*interest of HomeFed in the [rents],* Homefed is hereby granted a first priority, post-petition security interest in and lien upon all present and future [rents] received by the debtor.... [Emphasis added.]

Under *In re 1726 Washington, D.C. Partners,* 120 B.R. 1 (Bankr.D.D.C.1990), unless a receiver had been appointed pre-petition, the rents would not have been "cash collateral" absent this order. The parties may have recognized, however, that under *In re 1301 Connecticut Avenue Associates,* 117 B.R. 2 (Bankr.D.D.C.1990), the bank could take steps post-petition to perfect its security interest in future rents.

"adequate protection" as defined in 11 U.S.C. § 361.

The bank and other lienors were owed the following sums on the petition date:

| Tax liens | |
|---|---|
| 1991 real estate | $ 470,692.82 |
| 1990 space rental | $ 14,697.35 |
| Bank's first deed of trust | |
| Principal | $18,828,820.16[2] |
| Interest | $ 559,537.16 |
| Second deed of trust | $ 900,000.00 |
| | $20,773,767.75 |

The second deed of trust is held by insiders but has not been waived.

Since the filing of the case, the debtor has paid rents totalling $1,445,690.18 to the bank. The bank applied the payments first to the $559,537.16 in pre-petition interest; the $670,763 balance it has held for application to post-petition interest and taxes pursuant to the term's of the court's cash collateral order. The amount of taxes already paid is $215,390.14 for the first half of the tax year ending June 30, 1992. That $215,390.14 tax claim was not a lien claim when the case was filed, but pursuant to the terms of the cash collateral order the bank has an increased lien for this advance. The bank will shortly have to pay the second half of 1992 in a like amount and that too will be a lien.

The bank's notes have accrued both deferred interest (added to principal) and regular interest since the petition date. Interest has accrued in at least the amount of $1,945,686.58.

The bank's lien claim thus stands at $18,-828,820 in prepetition principal plus $215,-390.14 for taxes paid plus at least $1,945,-686.58 in post-petition interest accruals. Those interest accruals far exceed the $670,763 in remaining rents paid to the bank.[3] The balance owed the bank is well in excess of the $19.1 million value of the building.

**2.** This figure differs from exhibit 10 because exhibit 10 included $235.08 of deferred interest on Note B—added to principal under the terms of the note—that accrued in the last 3 days of March, 1991.

*Discussion*

The debtor urges that the $1,445,690 had to be applied to the principal of the bank's allowed secured claim against the building. This would result in an equity cushion for the bank of $1,445,690 (less any accruals on the senior tax liens) which the debtor urges would more than adequately protect the bank against the accruals of interest and penalties on the senior real estate tax liens, thus barring relief under 11 U.S.C. § 362(d)(1). The same reduced bank lien, the debtor urges, requires denial of relief under § 362(d)(2) both because (§ 362(d)(2)(A)) the debtor has equity and because (§ 362(d)(2)(B)) the debtor could reorganize: its income stream, it argues, would enable it to service tax liens and a bank lien reduced by $1,445,690 until the property can be sold.

The debtor's argument fails to recognize that rents are collateral distinct from the underlying real estate and that post-petition interest accruals may be collected from such rent collateral by virtue of 11 U.S.C. § 552(b). Because the rents received by the bank provided additional collateral, the rents—in equal amounts—both increased the bank's allowed secured claim under 11 U.S.C. § 506(b) by virtue of post-petition interest accruals and, by payment, decreased the bank's allowed secured claim. The rent payments never exceeded post-petition interest accruals on the bank's claims. Hence, the bank's allowed secured claim plus senior tax liens continue to equal the value of the debtor's building and there is no equity cushion for the bank's lien.

The debtor relies on decisions such as *In re Reddington/Sunarrow Ltd. Partnership,* 119 B.R. 809 (Bankr.D. N.M.1990), that have misapplied *United Savings Ass'n. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), and relies on other cases that are distinguishable from this

**3.** The $1,445,690.18 in rents paid the bank, to repeat, has been used first to pay $559,537.16 in pre-petition interest and $215,390.14 in taxes. That leaves $670,763 for other purposes.

case. *Timbers* supports the bank, not the debtor.

In *Timbers* the bank had a perfected security interest in the debtor's real property and its rents as well as a cash collateral order requiring that net income from rents be paid to the bank. But, as the court of appeals observed, no such rent payments were made to the bank. *In re Timbers of Inwood Forest Associates, Ltd.,* 793 F.2d 1380, 1383 (5th Cir.1986), panel opinion reinstated, 808 F.2d 363, 364 (5th Cir.1987) (en banc). In *Timbers* the Court addressed not the question of application of payments on a security interest *in rents* but the question whether an undersecured creditor is entitled to payments for the "lost opportunity costs" or "use value" of the *real property collateral* as adequate protection under § 362(d)(1). The Court rejected the request for "use value" payments as, among other flaws, "structurally inconsistent with 11 U.S.C. § 552." 484 U.S. at 374, 108 S.Ct. at 632. The Court explained (*id.*) that—

> ... Section 552(b) ... makes possession of a perfected security interest in postpetition rents or profits from collateral a condition of having them applied to satisfying the claim of the secured creditor ahead of the claims of unsecured creditors. Under petitioner's interpretation, however, the undersecured creditor who lacks such a perfected security interest in effect achieves the same result by demanding the "use value" of his collateral under § 362....

This is clear *dicta* that post-petition payments to a secured creditor who possesses a security interest in rents are payments on account of a *separate and distinct item of collateral,* apart from the underlying real estate which also secures the creditor's claims and which generates such rents.

The Court in *Timbers,* in disallowing "use payments" to an undersecured creditor, further described the rule of *Vanston Bondholders Protective Committee v.*

*Green,* 329 U.S. 156, 164, 67 S.Ct. 237, 240–41, 91 L.Ed. 162 (1946), carried forward to the Bankruptcy Code, as being that "[i]t was considered unfair to allow an undersecured creditor to recover interest from the estate's unencumbered assets before unsecured creditors had recovered any principal." [Citations omitted.] If the undersecured creditor does have a security interest encumbering rents then it follows that it is fair to recover interest from that encumbered asset. Under the reasoning of such cases as *Reddington/Sunarrow* the undersecured holder of a security interest in a bond would be required to apply interest received from that bond to its post-petition claim. As the court of appeals in *Timbers* observed, 793 F.2d at 1386 n. 6, the rule against the creditor's receiving post-petition income sometimes did not apply when the collateral itself is income producing.[4] Nothing in *Timbers* even remotely suggests that such payments must be applied to the undersecured creditor's secured claim, based *solely* on the value of the underlying real estate, in order to avoid the payment of prohibited "post-petition" interest in violation of Section 502 of the Code.

The position urged by the debtor would result in the application of the bank's bargained for collateral to create an "equity cushion" from which the debtor might hope to reorganize. Aside from the obvious inequity of such a result, it would create a dramatic incentive for any secured creditor to bring a single asset reorganization case to a halt at the earliest possible moment, and would create a similar incentive on the part of the debtors to delay the case as long as possible in order to reduce the amount of the creditor's secured claim. Such a result would be contrary to the spirit and policy of the Code, which contemplates the protection of secured interests in property and that debtors should have a reasonable period of time to reorganize.

---

**4.** As under the Bankruptcy Act, a court may limit the exception to the extent that the debtor's expenditures are responsible for the production of income: the last sentence of § 552(b) allows the court to disallow the security interest in post-petition income "based on the equities of the case." *See In re Raleigh/Spring Forest Apt. Assoc.,* 118 B.R. 42, 46 (Bankr.E.D.N.C.1990). The rents paid to the bank here, however, are net rents after expenses of maintenance and operation.

The debtor relies first on *Redding-ton/Sunarrow* to support its position. But *Reddington/Sunarrow* is not convincing authority because there the secured creditor, the RTC, apparently did not argue that its security interest in post-petition rents was accorded recognition under 11 U.S.C. § 552(b). Accordingly, the *Reddington/Sunarrow* court reasoned that the rent payments to the RTC had to be applied to reduce pre-petition principal on the bank's secured claim against the real estate. The blindspot in reasoning in *Reddington/Sunarrow* is the disregard of the RTC's independent lien on rents accorded protection under § 552(b) (a provision not cited by the parties). In any event, *Reddington/Sunarrow* is distinguishable because it dealt with a cash collateral order which lacked specific terms concerning how the rents were to be applied. Here the cash collateral order specifically addresses that issue and clearly manifests that the rents are a separate form of collateral from the real property itself: the security interest *in rents* is what is being addressed by the order.

*In re Oaks Partners, Ltd.*, 135 B.R. 440 (Bankr.N.D.Ga.1991) cited *Reddington/Sunarrow* but did not actually follow its holding. In *Oaks Partners* the court noted the Court's discussion in *Timbers* of § 552(b), but only said this does not mean that the secured creditor does not have to apply the rents to satisfy its claim, *id.* at 450, and specifically stated that it was not deciding whether the rents had to be valued separate and apart from the real estate in fixing the amount of the bank's allowed secured claim, *id.* at 451 n. 14. The issue was whether the rents had to be applied to the debt *in any manner whatsoever. Id.* at 449.[5] Thus, *Oaks Partners* simply did not address the issue presented in this

case. Here the bank did apply the rents to its claim.

*Confederation Life Ins. Co. v. Beau Rivage Ltd.*, 126 B.R. 632 (N.D.Ga.1991), similarly cited *Reddington/Sunarrow.* In dicta, *Beau Rivage* misconstrues *Timbers.* In rejecting rents as an independent form of collateral, *Beau Rivage* disregards the Court's view in *Timbers* of § 552(b) as granting the § 552(b) lienor a position superior to that of the non-§ 552(b) lienor who may not achieve the same results by demanding the "use value" of his collateral and also overlooks the Court's view that an undersecured creditor may be barred recovery of interest only from unencumbered assets.

However, *Beau Rivage* is distinguishable because the property produced no net rents after expenses of operation and maintenance. Moreover, the transfer of rents to the building's maintenance was responsible for the building's higher value and in effect reflected a shift of rent collateral to another form of collateral. The payments to the mortgagee were not of net rents but of adequate protection payments. Had the debtor here similarly used the net rents to add value to the building by way of capital improvements, the debt would not have been reduced but the allowed secured claim would have increased by the value added. Thus, *Confederation Life* is consistent with allowing post-petition interest here.[6]

More persuasive than the decisions the debtor cites are the decisions in *In re Flagler–At–First Assoc. Ltd.*, 114 B.R. 297 (Bankr.S.D.Fla.1990), and *In re Landing Associates, Ltd.*, 122 B.R. 288 (Bankr. W.D.Tex.1990). Both cases correctly respect the right under § 552(b) of a holder of a perfected security interest in rents to

---

**5.** The court in *Oaks Partners* indicated again in its opinion that it was wrestling with the bank's argument that it was "entitled to keep the $3,155,834.00 in net rents and not apply it to *any* portion of its claim." *Id.* at 451.

**6.** The debtor cites four other cases but each of these merely stands for the general proposition that to the extent that adequate protection payments exceed any decrease in the value of the collateral, they are to be applied to reduce the

allowed secured claim. *In re Broomall Printing Corp.*, 131 B.R. 32 (Bankr.D.Md.1991); *In re Maun*, 95 B.R. 94 (Bankr.S.D.Ill.1989); *In re Kain*, 86 B.R. 506 (Bankr.W.D.Mich.1988); *In re Canaveral Seafoods, Inc.*, 79 B.R. 57 (Bankr. M.D.Fla.1987). They are distinguishable because their facts are limited to proceeds of sale of the underlying collateral and they make no mention of a security interest in post-petition rents or other income.

look to the rents as a collateral independent of the building itself.

 Because the bank has no "equity cushion," its motion must be granted. Relief from the automatic stay is appropriate under § 362(d)(2) because the property, in which the debtor has no equity, is not necessary for an effective reorganization. The property is worth less than the bank's al' wed claim and the District of Columbia's allowed secured claims for taxes. The debtor envisions no plan other than a cash infusion of $100,000, representing 1/191st of the value of the property, with the debtor to hold onto the property, making reduced interest payments on secured debt, and to sell it in five years when the market hopefully resumes more historic levels of value and thereby realize something for junior creditors (including debtor's insider who holds the junior lien). That does not present a realistic prospect of the debtor having a confirmed plan within a reasonable period of time as required to meet the test of § 362(d)(2). *Timbers,* 484 U.S. at 375–76, 108 S.Ct. at 632–33.

The property's current value of $19.1 million is reflective of its future income stream and what investors anticipate the property could be sold for in the future. The debtor does not suggest how a truncated stream of payments to secured creditors, of less than the whole future stream of rents and proceeds of the property, could ever equal in value as of today the allowed value of the property of $19.1 million. The addition of $100,000—roughly ½ percent of the total value of the property— was not shown to be a certainty and in any event is a mere flyspeck.

The debtor's case has been pending for over a year. The debtor has not yet filed a plan and put on no proof that its partners are willing and able to make any cash infusion. The cash infusion envisioned is inconsequential. Although the debtor did put on evidence of optimistic projections as to its future operations, it has not filed a plan to date. The debtor has failed to present any evidence that the debtor will be able to make payments to the bank and the tax lien creditor at an interest rate that reflects the added risks to the bank on a property subject to liens equal to its value.

This likely explains the debtor's delay in proposing a plan. In any event, the debtor has failed to convince the court that there is a reasonable possibility of a successful reorganization within a reasonable time and, because the debtor bears the burden of proof, the court finds that the property is not necessary for an effective reorganization.

Relief is also appropriate under § 362(d)(1). The superior tax liens on the property continue to accrue interest and to erode the bank's secured position. Thus, § 362(d)(1) applies because the bank is not adequately protected.