### In re VEECO INVESTMENT CO., L.P., Debtor.

Bankruptcy No. 92–43068–399.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

July 19, 1994.

---

Peter D. Kerth, Clayton, MO, for debtor.

Steven Goldstein, Goldstein & Vouga, St. Louis, MO, for Frederick & Vera Cohen.

David L. Going, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO, for Southwest Enterprises Inc.

Carl F. Krauss, James C. Mordy, Morrison & Hecker, Overland Park, KS, for Phoenix Home Mut. Life Ins. Co.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This Memorandum Opinion and Order addresses the issue of whether Creditor Phoenix Home Life Mutual Insurance Company is a fully secured creditor.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. §§ 157(b)(2)(B), 157(b)(2)(K) & 157(b)(2)(O).

### STATEMENT OF FACTS

In 1989, Phoenix Home Life Mutual Insurance Company ("Phoenix"), loaned Veeco Investment Company, L.P. ("Debtor"), $7.65 million secured by a Deed of Trust, Assignment of Rents and Leases, and Security Agreement relating to the Lamp & Lantern Village Shopping Center ("Shopping Center").

In 1992, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code and Phoenix filed a proof of claim listing its claim as $7.66 million. Shortly after filing, Phoenix began to sequester rents pursuant to 11 U.S.C. § 546(b)[1] of the Code and, according to the distribution scheme set forth in the Cash Collateral Stipulation, Phoenix received $1.28 million in net rents from the Shopping Center after $.45 million was applied to taxes and insurance.

In June, 1994, this Court conducted a hearing to determine the value of the Shop-

---

1. All further references are to Title 11 unless otherwise specified.

ping Center (for the purposes of confirmation hearings) and found that it has a current value of $7.4 million. At the valuation hearing, Phoenix asserted that the $1.28 million it received in rent should be applied to post petition interest. The Debtor challenges this assertion and argues that Phoenix is not entitled to charge post petition interest because the amount of its claim exceeds the value of its collateral.

This Court took the matter under submission in order to obtain briefs from the parties.

## DISCUSSION

### I. Entitlement to Interest between the Date of Filing and Plan of Reorganization.

In a Chapter 11 proceeding, there are three categories of interest which correspond to the three different stages through which a successful Chapter 11 debtor passes. Pre-bankruptcy, all creditors are entitled to interest granted by agreement or by non bankruptcy law. Post-bankruptcy, the plan of reorganization designates and controls the entitlement to interest. This case involves the middle stage of a Chapter 11 proceeding i.e. that period of time between the filing of the bankruptcy and the filing of a plan of reorganization, sometimes called the pendency period.

During this period, the Code requires that fully or oversecured creditors receive interest on their claims, § 506(b) while unsecured creditors receive no interest on their claims, § 502(b). The Code does not specifically address undersecured creditors and for many years their entitlement to interest was the subject of substantial conflict in the Circuit Courts.[2] The United States Supreme Court resolved this issue in *United Savings Ass'n*

of Texas v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("Timbers"), when it held that undersecured creditors are not entitled to interest payments for the loss of the use of their collateral. Thus Phoenix's entitlement to post petition interest rests solely on the classification of their claim as fully or oversecured.

### II. Classifying Phoenix's Claim.

Only two components must be referred to in determining whether Phoenix stands as an undersecured creditor or an oversecured creditor: 1) the value of Phoenix's collateral; and 2) the amount of Phoenix's debt.

### A. Value of Phoenix's Collateral

At the June, 1994 valuation hearing, the Court determined that the Shopping Center has a value of $7.4 million. The appraisal experts testified the property value included not only the physical property, (the so called "bricks and mortar"), but also the prospective income generated by rents of the Shopping Center. The $7.4 million appraisal, however, did not include the $1.28 million of rent generated from the date of filing of the Chapter 11 petition through the end of May, 1994, and paid to Phoenix,[3] nor did it include additional cash, accounts receivable, and escrowed funds relating to rents from the Shopping Center. Phoenix is entitled to claim these items as collateral by virtue of its Assignment of Rents And Leases.

Bankruptcy law generally prevents a security interest from attaching to after-acquired property, but § 552(b) creates a specific exception for "rents or profits." Under this provision, when a security interest, created by a prepetition security agreement, includes collateral that the debtor acquires prior to the bankruptcy and also rents and profit, the

**2.** *In re American Mariner*, 734 F.2d 426 (9th Cir.1984) (Undersecured creditor entitled to adequate protection in the form of periodic cash payments to compensate for the loss of the "time value" of money); *accord Grundy Nat'l Bank v. Tandem Mining Corp.*, 754 F.2d 1436 (4th Cir. 1985); *compare In re Briggs Transp. Co.*, 780 F.2d 1339 (8th Cir.1985) (holding that interim interest payments could be required, but only after a fact-specific review of all circumstances). The Fifth Circuit took the contrary view of the Ninth Circuit by holding that interim interest

payments were never required. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc.* (*In re Timbers of Inwood Forest Assocs.*), 793 F.2d 1380 (5th Cir.1986) *aff'd on reh'g*, 808 F.2d 363 (5th Cir.1987).

**3.** "The right to specific rents prior to ownership of the property, conferred by an assignment of rents, is a priori not calculated into this value." *In re The Landing Assoc.*, 122 B.R. 288, 297 (Bankr.W.D.Tex.1990).

security interest is deemed valid and operative as to any such proceeds that the estate obtains post petition.[4] § 552(b); *In re Slab Fork Coal Co.*, 784 F.2d 1188 (4th Cir.1986). Thus, Phoenix's collateral includes the $7.4 million Shopping Center and the rents and profit generated by the property since the Debtor's bankruptcy filing.

In Exhibit A to its Brief, Phoenix included the $1.28 million in calculating its collateral.

This was improper because such net rent money was already paid to Phoenix. The $1.28 million lost its status as collateral when it was paid over to Phoenix and the Debtor's rights in the money were extinguished.[5] Therefore, the value of Phoenix's collateral should not include the $1.28 million and should instead be expressed in the following manner:

| | |
|---|---|
| Shopping Center Value determined by this Court: | $7,400,000.00 |
| Cash held by property manager: | 88,172.28 |
| Accrued but uncollected accounts receivable: | 111,303.88 |
| Escrow account held by Phoenix: | 113,695.50 |
| | $7,713,171.66 |

### B. Amount of Phoenix's Debt

■ Phoenix's claim comprises the amount of the debt on the date of filing as well as interest accrued since the filing, less rents earned during the Chapter 11 proceeding and paid to Phoenix. Phoenix's calculations do not subtract the $1.28 million from its claim. This sum should certainly be deducted, however, since it was paid over to Phoenix to reduce its claim regardless of whether it is applied to interest or principal. With this adjustment, Phoenix's debt stands as follows:

| | |
|---|---|
| Proof of Claim (as of Debtor's filing date) | $7,667,315.91 |
| Interest at 10.25% Contract Rate | 201,562.50 |
| Interest at 6.74% Contract Rate | 884,625.50 |
| Interest at 6.74% Contract Rate [6] | 41,125.00 |
| | $8,794,628.41 |
| Less Rent Paid to Phoenix | 1,281,523.61 |
| | $7,511,104.80 |

### III. Phoenix's Position in Debtor's Bankruptcy.

■ Phoenix, as of June 1, 1994, is an oversecured creditor to the extent of the difference between the value of its collateral and the amount of its claim:

| | |
|---|---|
| Value of Phoenix Collateral | $7,713,171.66 |
| Amount of Debt due Phoenix | 7,511,104.80 |
| Collateral exceeds Debt by | $ 202,066.86 |

As an oversecured creditor, Phoenix may receive post petition interest pursuant to § 506(b) of the Code, which permits interest, fees, costs, and charges only up to the value

4. The estate of the debtor may continue to acquire interests in property post petition including rent and profits from real estate. § 541(a)(6).

5. *See e.g.* Mo.Rev.Stat. § 400.9–203(1)(c) (Vernon 1994) which requires that a debtor have rights in collateral before a creditor's security interest can attach; and § 400.9–504 which discharges a security interest when a creditor reduces collateral

to proceeds and makes a proper disposition of the collateral.

6. These interest rates are applied pursuant to the terms of the Note between Debtor and Phoenix and represent different periods of time between Debtor's filing date and June 1, 1994.

of the collateral. Furthermore, the $1.28 million which Phoenix already holds may be applied to interest which has accrued since the filing of the bankruptcy petition.

The Debtor argues that the $1.28 million should be applied to reduce the value of Phoenix's prepetition claim against the Shopping Center and not to the post petition interest and cites *In re Reddington/Sunarrow Ltd.*, 119 B.R. 809 (Bankr.D.N.M.1990) as support. This case is not persuasive, however as neither party in that case, nor the bankruptcy court considered § 552(b) and the impact of a perfected security interest in post petition rents. A creditor "with a security interest in post petition rents may, pursuant to § 552(b), retain those rents as separate collateral without crediting them against the value of the real property collateral. To hold otherwise would ... render § 552(b) a nullity." *Mut. Life Ins. Co. of New York v. Paradise Springs Assocs. (In re Paradise Springs Assocs.)*, 165 B.R. 913, 926 (Bankr. D.Ariz.1993). Thus, this Court will follow *Paradise Springs* and those other bankruptcy courts which permit application of post petition rents to post petition interest.[7]

Furthermore, the Debtor's argument that this Court should follow *Timbers*, 484 U.S. 365, 108 S.Ct. 626, and value the property as of the date of filing ignores both § 552(b) and the specific facts to which *Timbers* applied. The practical effect of § 552(b) is that a creditor's pre-bankruptcy collateral may be augmented over the life of the case. A date-of-filing analysis diminishes the benefit of a security interest in rents, creates a windfall "equity" for the debtor and completely overlooks the Code-mandated status as collateral.

Debtor's reliance on *Timbers* is similarly inappropriate. *Timbers* found it necessary to value the collateral on the date of filing because that case concerned a § 362 motion for relief from the automatic stay and the amount of and entitlement to adequate protection payments. The function of adequate protection is to maintain the value of the creditor's interest in the properties as of the filing date. *Timbers*, 484 U.S. at 372–73, 108 S.Ct. at 630–32. In this case, the Court is not asked to determine how much the value in the property will be reduced over the life of the case, rather it is asked to determine a

creditors rights with respect to post petition collateral (rent) which is earned up to the date of confirmation. *In re The Landing Assoc. Inc.*, 122 B.R. 288, 293 (Bankr. W.D.Tex.1990) ("a secured creditor's interest in the estate's interest in property may well grow during the pendency of a case, augmenting the secured creditor's secured claim"). These rents must be considered as collateral so long as they have not been paid over to Phoenix.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that Phoenix is an oversecured creditor to the extent of $202,066.86 as of June 1, 1994, and may charge interest, and allowed fees, costs, and charges to the extent allowed by the Bankruptcy Code up to the value of the collateral;

IT IS FURTHER ORDERED that Phoenix may apply the $1,281,523.61 in post petition rents to its claim for interest accrued since the filing of the bankruptcy petition.

---

**7.** *See also In re Bloomingdale Partners*, 155 B.R. 961 (Bankr.N.D.Ill.1993); *In re Vermont Inv.*, L.P., 142 B.R. 571 (Bankr.D.D.C.1992).