**In re O & S TRUCKING, INC., Debtor.**

**No. 12–61003.**

United States Bankruptcy Court,
W.D. Missouri.

Signed May 13, 2014.

Order Denying Reconsideration
June 6, 2014.

Donald G. Scott, Jonathan A. Margolies, McDowell Rice Smith & Buchanan, Kansas City, MO, for Debtor.

Jerry L. Phillips, Office of the U.S. Trustee, Kansas City, MO, for U.S. Trustee.

## ORDER SUSTAINING, IN PART, DEBTOR'S OBJECTION TO CLAIM OF MERCEDES BENZ FINANCIAL SERVICES USA, LLC d/b/a DAIMLER TRUCK FINANCIAL and DETERMINING SECURED STATUS OF DAIMLER'S CLAIM

ARTHUR B. FEDERMAN, Chief Judge.

As announced in open court at the close of the hearing held on May 8, 2014, in Springfield, Missouri, the claim of Mercedes Benz Financial Services USA, LLC d/b/a Daimler Truck Financial ("Daimler") is ALLOWED as a secured claim in the amount of $1,425,309.40. The remainder of Daimler's claim is unsecured, in the amount of $819,183.48 less the proceeds received by Daimler from a commercially reasonable sale of the eleven vehicles previously surrendered by Debtor, and still in Daimler's possession.

Section 506(a)(1) of the Bankruptcy Code provides generally that a creditor's claim is secured to the extent of the value of its collateral. The statute then provides that "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

At the outset of the case, Daimler held a security interest in 99 vehicles being operated by the Debtor or its lessee drivers, as well as the proceeds of such collateral, and was owed $6,966,162.82.[1] On August 7, 2012, the Debtor and Daimler entered into an Agreed Adequate Protection Order[2]

1. *Amended Stipulation of Facts for Hearing on May 8, 2014* (Doc. No. 714), including agreed correction and adjustment).

2. *Agreed Order on Motion for Adequate Protection or, in the Alternative, to Prohibit Use of Cash Collateral and Grant Relief from the*

*Automatic Stay and Motion to Prohibit Unauthorized Use and for Sequestration of Cash Collateral, Filed by Mercedes–Benz Financial Services USA, LLC dba Daimler Truck Financial* (Doc. No. 260).

providing generally that the Debtor could continue to use such vehicles provided that the Debtor made monthly adequate protection payments to Daimler. The Agreed Adequate Protection Order also contemplated that the Debtor would be surrendering some of those vehicles to Daimler, and that the debt would be reduced upon liquidation of such vehicles. Therefore, rather than the parties agreeing on a fixed total monthly adequate protection payment, such Agreed Adequate Protection Order set out a value for each such vehicle, and set the adequate protection payment per vehicle at 2% of such value. The Agreed Adequate Protection Order does not specify what basis was used to arrive at such values.

In the course of the case, all but 23 of such vehicles have been surrendered by the Debtor to Daimler. Liquidation of such vehicles has reduced the total debt. In addition, the Debtor has made adequate protection payments in the total amount of $1,577,488.01. Such adequate protection payments serve to reduce the total debt owed, before any determination is made as to how much of that debt is secured.[3] The parties stipulated that, with those and other adjustments, the total remaining debt secured by the 23 vehicles and their proceeds was $2,244,492.88, as of May 5, 2014.

Pursuant to § 506(a), the issue here is the value of Daimler's remaining collateral.

■ In his well-reasoned opinion in *In re Civic Partners Sioux City LLC,*[4] the

Honorable Thad J. Collins concluded, based on § 506(a), that "collateral valuation can happen at a variety of times during the case—and often at confirmation."[5] Such conclusion comports with the holding of the Eighth Circuit in *In re Ahlers,*[6] to the effect that an initial valuation of collateral for adequate protection purposes is not *res judicata* in determining value of the collateral for plan confirmation purposes. In so holding, the Circuit Court relied on the legislative history of § 506(a), which states that "... a valuation early in the case in a proceeding under sections 361–363 would not be binding upon the debtor or creditor at the time of confirmation of the plan."[7]

While the Debtor has argued here that the agreed value for adequate protection purposes is somehow binding on Daimler in determining value for confirmation purposes, or should be used as a starting point in valuing the collateral now, such arguments are contrary to the statute, its legislative history, and the caselaw interpreting it. I turn then to the proper basis for valuing Daimler's collateral at this point in the case, for the purpose of determining whether the Plan filed by the Debtor is confirmable.

The Supreme Court has held that in valuing a claim secured by personal property for plan confirmation purposes, where the debtor intends to retain possession of the property, the appropriate valuation standard is replacement value.[8] In other

**3.** *See In re Civic Partners Sioux City, LLC,* 2013 WL 5534743, at *22–24 (Bankr. N.D.Iowa Oct. 7, 2013).

**4.** 2013 WL 5534743 (Bankr.N.D.Iowa Oct. 7, 2013).

**5.** *Id.* at *22.

**6.** 794 F.2d 388 (8th Cir.1986), *rev'd on other grounds, Norwest Bank Worthington v. Ahlers,*

485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

**7.** *Id.* at 398 (quoting S.Rep. No. 989 at 68, U.S.Code Cong. & Ad. News at 5854).

**8.** *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 963, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

words, what would the Debtor be required to pay to replace such vehicles?

■ The most reliable evidence offered of replacement cost was the NADA retail values which, as stipulated by the parties, would be $1,373,400.00. Such total is based on a per vehicle retail value of $62,100 for the bulk of the remaining vehicles, which are 2010 Freightliners.

Each party offered various alternative valuations. Daimler argued for a valuation of $85,000 for the 2010 Freightliners, based on the fact that Debtor had entered into lease/purchase agreements with various drivers and that, as to one of such agreements, the total stream of payments over a period of three years came to approximately $85,000. But this argument ignores the time value of money and the possibility that it will not be paid by the drivers, and no evidence was offered as to the effect such factors might have on value.

The Debtor, by contrast, argues for lower values based on the auction prices Daimler received for approximately 65 vehicles it sold after the Debtor surrendered them, and the sale of another three vehicles by the Debtor. But the auctions at which Daimler sold such vehicles are only open to dealers, not retail customers, and the prices do not reflect the costs needed to refurbish such vehicles for resale. And the Debtor's sample of three sales is too small to be reliable.

In *Rash*, the Court held that "a simple rule of valuation is needed to serve the interests of predictability and uniformity."[9] NADA retail provides a predictable and uniform means of determining replacement cost and I find it to be the best approach here.

Debtor's counsel seemed to argue at the close of the hearing that such value could not be correct because the agreed value for adequate protection payments per vehicle, less the adequate protection payments made, would come to a much lower number per vehicle. But, as stated, the issue is not what the parties agreed on as to value at the beginning of the case, or whether the adequate protection payments made accurately reflect a decline in the value of the vehicles over the course of the case. The issue instead is what the Debtor would have to pay to replace these vehicles at this time. As stated, the most reliable evidence on that issue was NADA retail. Therefore, I hold their replacement cost to be $1,373,400.

■ Daimler's loan documents also gave it a security interest in proceeds of its collateral. Thus, the next question is whether the value of its secured claim should be increased by proceeds generated post-bankruptcy from the use of the trucks on which it held a security interest.

Section 552(b) of the Bankruptcy Code provides, as relevant here, that if the debtor and a creditor entered into a security agreement before the filing of the bankruptcy petition, and if the security interest extends to proceeds, products, offspring, or profits of the collateral, then such security interest continues in any proceeds, products, offspring, or profits generated post-petition. Daimler's security interest here did cover proceeds from the use of Daimler's trucks.

The Debtor argued that because the Agreed Adequate Protection Order did not specifically provide that proceeds attributable to Daimler's trucks be segregated, and that the security interest continued in such funds, then the security interest was lost. That argument is contrary to

**9.** *Id.* 520 U.S. at 964, 117 S.Ct. 1879 (citation and internal quotation marks omitted).

§ 552(b), which itself continues the lien in effect. Daimler argued that its secured claim was increased to the extent the Debtor received funds from the use of its trucks post-petition, and should then be reduced only by the amount of adequate protection payments made. As explained at the hearing, however, that analysis ignores the expenses the Debtor incurred in order to generate that new income each month. If the Daimler trucks were the only ones being operated by the Debtor, the cash now in the Debtor's accounts would represent the net of its post-petition income, less adequate protection payments and expenses. That net amount would represent the post-petition increase in Daimler's secured claim. As of the hearing date, that amount was $207,637.61.

However, the parties agreed that Debtor is now operating 92 vehicles, of which just 23, or 25% of them, are Daimler vehicles. Therefore, in the absence of any evidence to the contrary, I hold that Daimler's security interest has been increased by 25% of the total amount of funds in the Debtor's accounts, or $51,909.40, as proceeds of its vehicles.

Accordingly, I hold that for plan confirmation purposes, Daimler holds a secured claim in the total amount of $1,425,309.40. The remainder of its claim is unsecured. The Debtor's Objection to the Claim of Mercedes Benz Financial Services USA, LLC d/b/a Daimler Truck Financial is, therefore, SUSTAINED, IN PART.

IT IS SO ORDERED.

---

**1.** Fed.R.Civ.P. 59(e), made applicable here by Fed. R. Bankr.P. 9023.

**2.** The following statement of the purpose and standards for relief under Rule 59(e) is taken, almost *verbatim,* from the Debtor's Motion.

**3.** *In re Hernandez,* 468 B.R. 396, 401 (Bankr. S.D.Cal.2012).

---

*ORDER DENYING DEBTOR'S MOTION FOR RECONSIDERATION OF ORDER SUSTAINING, IN PART, DEBTOR'S OBJECTION TO CLAIM OF MERCEDES BENZ FINANCIAL SERVICES USA, LLC d/b/a DAIMLER TRUCK FINANCIAL and DETERMINING SECURED STATUS OF DAIMLER'S CLAIM*

Debtor O & S Trucking, Inc. requests that I reconsider my ruling on its objection to the claim of Mercedes Benz Financial Services USA, LLC d/b/a Daimler Truck Financial ("Daimler") and determining the amount of Daimler's claim. Creditors People's Capital and Leasing Corp. and Metropolitan National Bank each filed Amicus Briefs in support of the Debtor's position, and Ozark Mountain Energy, Inc., and Navistar Financial Corporation joined the amici. For the reasons that follow, the Debtor's Motion for Reconsideration is DENIED.

The Debtor's Motion for Reconsideration requests that I alter or amend the Order on its objection to Daimler's claim under Rule 59(e).[1] The Debtor correctly states the purpose and standard for such relief:[2]

"Bankruptcy Rule 9023 allows reconsideration of the correctness and merits of the initial order."[3] "The rule permits a court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings."[4] It also permits a party to

---

**4.** *In re MCB Fin. Group, Inc.,* 461 B.R. 914, 918 (Bankr.N.D.Ga.2011) (citation and internal quotation marks omitted). *See also In re Crystalin, L.L.C.,* 293 B.R. 455, 465 (8th Cir. BAP 2003); *In re Bauman,* 465 B.R. 495, 504 (Bankr.N.D.Ill.2012).

bring to the attention of the judge factual and legal errors that would have changed the outcome.[5] Grounds for reconsideration of a court's ruling include the existence of clear errors or law or fact and prevention of manifest injustice.[6] "A party seeking reconsideration of a ruling should demonstrate 'an error in the trial court that is direct, obvious, and observable.'"[7] "A decision should be reconsidered when facts that would alter or impact the decision have been overlooked or misapprehended."[8] Manifest injustice exists in the circumstance of "a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy."[9]

While relief under Rule 9023 is an extraordinary remedy, it is appropriate in "circumstances in which the moving party has set forth facts or law of a 'strongly convincing nature' that indicate that the court's prior ruling should be reversed."[10] As the Eighth Circuit Bankruptcy Appellate Panel has observed, requests for such relief "require the court ultimately to consider how justice can best be served, not whether or not the attorneys for the losing side have done their job in identifying the basis for the relief the *party* may wish to obtain."[11]

While I fully agree with the Debtor's statement of the standard, I find that the Debtor has not met it. The Debtor seeks reconsideration of two findings in the ruling on Daimler's claim, namely,

the manner of application of the adequate protection payments to the claim, and the inclusion of post-petition proceeds being held in the Debtor's account as part of Daimler's secured claim. Both of these issues turn on the question of whether Daimler's security interest in the proceeds from its collateral continued post-petition.

Preliminarily, in connection with confirming a debtor's Plan, a court must determine the value of a secured creditor's claim. Section 506(a) of the Bankruptcy Code provides that a claim is secured to the extent of the value of the creditor's collateral:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.[12]

The Eighth Circuit has held that an initial valuation of collateral for adequate protection purposes is not *res judicata* in determining the value of collateral for plan con-

---

5. *In re Bauman*, 465 B.R. at 504 (citation and internal quotation marks omitted).

6. *In re Solomon*, 436 B.R. 451, 453 (Bankr. W.D.Mich.2010).

7. *In re Henning*, 420 B.R. 773, 785 (Bankr. W.D.Tenn.2009).

8. *In re Tribune Co.*, 464 B.R. 208, 213 (Bankr. D.Del.2011).

9. *Henning*, 420 B.R. at 785.

10. *Id.* (citation omitted).

11. *Crystalin*, 293 B.R. at 466 (citation omitted; emphasis in original).

12. 11 U.S.C. § 506(a)(1).

firmation purposes.[13]

This bankruptcy case was filed May 30, 2012. Prior to then, Daimler held a security interest not only in the trucks it had financed, but also in any driver lease payments and other proceeds generated by the Debtor from use of such trucks.[14] Thus, if Daimler had called its loan and repossessed its trucks, it would have also been entitled to any proceeds from those trucks then held by the Debtor, be they in the form of cash, accounts receivable, lease agreements with drivers, or otherwise. Pre-bankruptcy, that security interest in proceeds remained in effect until the Debtor spent them.

The Bankruptcy Code provides that, absent a court order to the contrary, such pre-bankruptcy security interests remain in effect as to such proceeds subsequent to the bankruptcy filing. Section 363 of the Bankruptcy Code defines cash collateral to include "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property. . . ."[15] Section 552(b) provides that a secured creditor's lien extends to proceeds, products, offspring, or profits of such property acquired after commencement of the bankruptcy, "*except to the extent the court orders otherwise.*"[16]

On June 14, 2012, approximately two weeks after the case was filed, Daimler filed a Motion for Adequate Protection or, in the Alternative, to Prohibit Use of Cash Collateral, and Grant Relief from the Stay.[17] On July 26, 2012, it filed a Motion to Prohibit Use of Cash Collateral.[18] Both motions pointed out that Daimler held a security interest not only in certain trucks, but also in the proceeds generated by such trucks, including lease payments received and owed by drivers.

The Agreed Adequate Protection Or-

---

**13.** *In re Ahlers*, 794 F.2d 388 (8th Cir.1986), *rev'd on other grounds, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

**14.** According to the UCC Financing Statement offered as Exhibit G at the hearing, Daimler's security interest extends to, *inter alia*, "all proceeds and products of any of the foregoing [vehicles, trailers and/or chassis], including, without limitation, all tangible chattel paper, electronic chattel paper, goods . . ., contract rights, leases, accounts, documents, instruments, promissory notes, general intangibles, payment intangibles, supporting obligations, claims and tort recoveries, money and insurance proceeds relating to or arising out of any of the foregoing and all proceeds of such proceeds."

**15.** 11 U.S.C. § 363(a).

**16.** 11 U.S.C. § 552(b)(1) (emphasis added). Section 552(a) provides that, "[e]xcept as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." Section 552(b)(1) provides, in relevant part that, "if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

**17.** Doc. No. 66.

**18.** Doc. No. 110.

der[19] provides that it is in settlement of those motions. The parties agreed that the Debtor would make monthly payments to Daimler equal to two percent of the then-current NADA value of such trucks. The Debtor in effect argues that that agreement was based on the presumption that those trucks would decline in value by two percent each month. Now, the Debtor says, it appears that the vehicles have declined by significantly less than the two percent, so any excess paid should be used to reduce Daimler's secured claim. But the Order does not so state. Instead, the Order provides that from time to time, the Debtor would surrender trucks to Daimler. Thus, rather than computing a new amount due each month, the Debtor would simply pay based on the trucks it had retained.

The Debtor also in effect argues that in the Agreed Adequate Protection Order, Daimler agreed to waive its security interest in the lease payments and other proceeds.[20] But since that Order does not so provide, § 552(b) extended Daimler's lien to postpetition proceeds. In the Order, Daimler merely consented to the use of those proceeds to the extent they were not being paid over as adequate protection.[21] As a result, Daimler maintains that the adequate protection payments compensate it not only for the decline in value of the trucks, but also for the use of the proceeds upon which it retained a security interest. Based on both the statute and the text of the Order, I agree.

Debtor argues that it has cited to "copious and compelling" case law in support of its position that the lien on rents need not be considered.[22] Two of those cases did not involve rents or proceeds.[23] One involved proceeds, but did not mention § 552.[24] In any event, to the extent any of the cited cases are factually similar to the case at bar, I find they are contrary to the well-developed and better-reasoned majority view.

As I stated previously, because Daimler has a security interest in the trucks' proceeds, I find the analysis in *In re Civic Partners Sioux City, LLC* to be applicable and well-reasoned. "Under § 506, 'a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral.'"[25] "To separate

**19.** *Agreed Order on Motion for Adequate Protection or, in the Alternative, to Prohibit Use of Cash Collateral and Grant Relief from the Automatic Stay and for Sequestration of Cash Collateral* (Doc. No. 260).

**20.** *See, e.g.,* Debtor's *Summary Reply to Response of Mercedes Benz Financial Services USA, LLC d/b/a Daimler Truck Financial* (Doc. No. 749).

**21.** The evidence shows that, subsequent to the filing of the bankruptcy, the Debtor generated $2,180,222.60 in revenues from the use of Daimler's trucks. The Debtor made adequate protection payments totaling $1,609,212.01.

**22.** *Memorandum in Support of Rulings in Favor of Debtor on Disputes with Daimler* (Doc. No. 715) at ¶ 21, referring to *Motion for Determination of Secured Status and Request for Related Relief* (Doc. No. 607) (citing *Con-*

*federation Life Ins. Co. v. Beau Rivage Ltd.,* 126 B.R. 632, 640 (N.D.Ga.1991); *In re Weinstein,* 227 B.R. 284 (9th Cir. BAP 1998); *In re Reddington/Sunarrow L.P.,* 119 B.R. 809 (Bankr.D.N.M.1990); *In re Spacek,* 112 B.R. 162 (Bankr.W.D.Tex.1990); *In re B & B West 164th Street Corp.,* 147 B.R. 832 (Bankr. E.D.N.Y.1992)).

**23.** *In re Weinstein,* 227 B.R. 284, and *In re B & B West 164th Street,* 147 B.R. 832.

**24.** *In re Spacek,* 112 B.R. 162.

**25.** *In re Civic Partners Sioux City, LLC,* 2013 WL 5534743, at *17 (Bankr.N.D.Iowa Oct. 7, 2013) (quoting *Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 961, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)).

the secured from the unsecured portion of a claim, a court must *compare the creditor's claim to the value of* 'such property,' *i.e., the collateral.*'"[26] "The property's value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property."[27]

> The amount of the creditor's *allowed claim* is generally measured as of the petition date. The amount of the *secured claim* is not fixed at or pegged to any particular time. It is determined by comparing the amount of the allowed claim to the "value of the collateral." That collateral valuation can happen at a variety of times during the case—and often at confirmation. Thus, the secured portion of an allowed claim is fixed at that point in time.[28]

As stated, an initial valuation of collateral for adequate protection purposes is not *res judicata* in determining value of the collateral for plan confirmation purposes.[29]

Here, the parties stipulated that amount of Daimler's *allowed claim* as of the petition date was $6,966,162.82. That claim was secured by at least 99 trucks. After giving postpetition credits for returned vehicles, adequate protection payments, and certain other credits, the parties stipulated that the Debtor owed Daimler, as of May 5, 2014, the total sum of $2,244,492.88. At the time of the hearing, this sum was secured by 23 remaining trucks and their proceeds.

I found that the value of the physical truck component of Daimler's collateral at the time of the hearing was $1,373,400. As stated, the Debtor does not seek reconsideration of that finding. Rather, the Debtor and joining creditors assert that number must be reduced by the postpetition adequate protection payments because such adequate protection payments were intended only to protect Daimler from loss of value of the trucks through their usage over time. Again, this would be correct if Daimler's security interest was limited to the trucks themselves. However, this position disregards Daimler's security interest in the proceeds of the trucks which continued postpetition as the lease payments came in. As the Court in *Civic Partners* described it, the post-petition lease payments increased Daimler's total secured claim when they were paid to the Debtor, and then dropped the value of the secured claim back down when the lease payments were paid over to Daimler as adequate protection.[30]

> This pays down [Daimler's] overall claim, but ends in a wash with regard to the secured claim. It increases the secured claim temporarily then reduces the secured claim by that payment of the [lease payments]. The net effect reduces the unsecured portion of the claim by paying down the overall value of the claim while the value of the secured claim is unchanged.[31]

As the Court in *Civic Partners* did, I recognize there is a split of authority on this issue,[32] but I agree with *Civic*

---

26. *Id.* (quoting *Rash,* 520 U.S. at 961) (emphasis added by *Civic Partners* ).

27. *Id.* (citing 11 U.S.C. § 506(a)(1), internal quotation marks omitted).

28. *Id.* (citations omitted, emphasis added).

29. 794 F.2d 388 (8th Cir.1986), *rev'd on other grounds, Norwest Bank Worthington v. Ahlers,*

485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

30. 2013 WL 5534743, at *25.

31. *Id.*

32. *Id.* at *26–27.

*Partners* that the amount of a *secured claim* is not fixed at the filing of the petition and that, pursuant to § 552(b), the secured portion of a claim secured by proceeds of collateral (such as rents and lease payments) continues to grow as the proceeds are received by the debtor. The cases acknowledging this "are not only the clear 'majority trend' but also the better reasoned cases." [33] Any other reading ignores the security interest in the proceeds and renders § 552(b) superfluous in a Chapter 11.[34]

The Debtor argued—and appears to continue to argue—that because the Agreed Adequate Protection Order did not specifically provide that proceeds attributable to Daimler's trucks be segregated, and that the security interest continued in such funds, then the security interest in the proceeds was lost. However, as I stated previously, that argument is contrary to § 552(b), which expressly continues the lien in effect. None of the cases cited by the Debtor and joining creditors holds that § 552(b) is nullified when a creditor who agrees to the use of cash collateral does not require segregation of proceeds and expressly preserve its lien. Rather, the purpose of segregation and an express reservation of a lien in the segregated funds is to prevent the very kind of accounting problems that arose in this case. Namely, while the Debtor was arguing that Daimler's secured claim should not be increased by the driver lease payments, Daimler argued that its secured claim was increased to the full extent the Debtor received funds from the use of its trucks post-petition, and should then be reduced only by the amount of adequate protection payments made. As explained previously, however, that analysis ignores the expenses the Debtor incurred in order to generate that new income each month, which is why lenders with liens in cash collateral typically require debtors to adhere to a budget for the use of the cash collateral. In addition, by agreeing to accept a specific dollar amount as adequate protection (as opposed to requiring the Debtor to pay over all proceeds), Daimler did, in effect, agree to the Debtor's spending any proceeds which exceeded the adequate protection payments.

While I agree that this analysis was made far more complicated because Daimler did not require segregation, a budget, and an express preservation of its lien in the driver lease payments, the failure to do so did not nullify § 552(b) or wipe out Daimler's lien in proceeds. The Debtor's and joining creditors' request for reconsideration of that conclusion is denied.

Next, the Debtor asserts that I should not have included in Daimler's secured claim any of the proceeds (driver lease payments) currently being held in the Debtor's accounts. But for the same reasons stated above, I find that § 552(b) preserved Daimler's lien in the driver lease payments, including those held in the Debtor's bank accounts. Based on the only evidence offered, I find the amount so secured to be $51,909.40. Since there is no other evidence on that point, there is no basis to reconsider that finding.

---

**33.** *Id.* at *27. *See also, e.g., Beal Bank, S.S.B. v. Waters Edge L.P.,* 248 B.R. 668, 685 (D.Mass.2000); *In re Old Colony, LLC,* 476 B.R. 1 (Bankr.D.Mass.2012); *In re Machinery, Inc.,* 287 B.R. 755, 764 (Bankr.E.D.Mo.2002); *In re Union Meeting Partners,* 178 B.R. 664, 675 (Bankr.E.D.Pa.1995); *In re Veeco Inv. Co., L.P.,* 170 B.R. 149, 151–52 (Bankr. E.D.Mo.1994); *In re Vermont Inv. L.P.,* 142 B.R. 571, 573 (Bankr.D.C.1992); *In re Flagler–At–First Assocs., Ltd.,* 114 B.R. 297, 303 (Bankr.S.D.Fla.1990).

**34.** *In re Old Colony, LLC,* 476 B.R. 1, 26 (Bankr.D.Mass.2012) (quoted in *Civic Partners,* 2013 WL 5534743, at *27).

Despite the Debtor's sometimes overblown rhetoric and its unwarranted allegations that Daimler has been disingenuous, this is a legal dispute upon which the parties and the case law disagree. I conclude that the majority view, which also represents the most recent cases, is the better reasoned.

ACCORDINGLY, the Debtor's Motion for Reconsideration of the Order on its objection to Daimler's claim is DENIED.

IT IS SO ORDERED.