**In re Patrick P. PETRELLA and Sabine Petrella, Debtors.**

**Bankruptcy No. 98–16929.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 18, 1999.

Patrick & Sabine Petrella, Parna, OH, for Debtor.

Lee R. Kravitz, Cleveland, OH, for Debtor.

Geoffrey J. Peters, Weltman, Weinberg & Reis, Cleveland, OH, for Green Tree Financial Services.

Myron E. Wasserman, Cleveland, OH, for Trustee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this Chapter 13 case, Patrick and Sabine Petrella (the Debtors) submitted their proposed plan (the Plan) for Court approval. Greentree Financial Service (Greentree), a disputed secured creditor, filed an objection to confirmation of the Plan. Upon the conclusion of an evidentiary hearing, an examination of the record, generally, Greentree's ob-

jection is sustained in part, and is overruled, in part.

Core jurisdiction of this matter is acquired under 28 U.S.C. §§ 1334, 157(b)(2) and General Order No. 84 of this district. Consequent with the filing of their Chapter 13 case, the Debtors submitted their proposed repayment plan. Greentree was scheduled as a secured creditor with a first mortgage of $99,900.00 of which $9,186.00 was scheduled as unsecured and a second mortgage of $16,000.00 with the entire amount scheduled as unsecured. It is uncontested that Greentree holds a first and second mortgage on the Debtors' personal residence located in Parma, Ohio. The Debtors seek to modify Greentree's second mortgage on their personal residence. Greentree objected.

In resolving this matter, the Court must determine whether the Plan, as proposed, wrongfully modifies any claimed security interest of Greentree. Greentree contends that it is secured by a security interest only in real property that is the Debtors' principal residence and, as such, its security interest cannot be modified as a matter of law. The Debtors, however, assert that valuation of the subject property leaves no security interest beneficial to Greentree and thereby allows modification as proposed.

Under the Bankruptcy Code, § 1322(b)(2) provides:

§ 1322(b):

Subject to subsections (a) and (c) of this section, the plan may ——

. . .

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. 11 U.S.C. § 1322(b)(2) (Emphasis added).

Section 1322(b)(2) must be construed in conjunction with provisions of § 1322(c)(2), 1323(a), and 1325(a)(5).

Section 1322(c)(2) provides:

§ 1322:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Further, § 1323(a) provides:

(a) The debtor may modify the plan at any time *before* confirmation, *but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322* of this title. 11 U.S.C. § 1323 (Emphasis added).

Finally, in order to achieve confirmation, *inter alia,* the proposed modified plan is confirmable only if ——

§ 1325(a)

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(5) with respect to each allowed secured claim provided for by the plan ——

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder . . . . 11 U.S.C. § 1325(a)(1)(5)(A)(B)(C).

The policy rationale for 1322(b)(2)'s anti-modification provision was addressed by noted commentators:

. . . . For at least three reasons the debtor's power to modify a secured creditor's rights in Chapter 13 is more restricted than would be true under Chapter 11. The most obvious limitation arises from the "other than" clause in section

1322(b)(2). That clause excludes modification of mortgages on the debtor's principal residence. Because a Chapter 13 debtor's principal secured loan is likely to be one secured by his home, that exclusion is significant. Second, section 1322(c) [redesignated § 1322(d) under the Bankruptcy Reform Act of 1994] contemplates three-year plans as the norm and prohibits any plans that are longer than five years. Because a plan cannot extend beyond five years, courts have found that the Chapter 13 debtor has no power to modify the rights of a secured creditor whose debt is payable over a term longer than five years

. . . .

To summarize, the apparently large power in Chapter 13 to modify the rights of secured creditors is in fact smaller than first appears. Here, as in Chapters 11 and 12, the principal limitation upon the power to modify the rights is the best interest test —— the rule that the creditor must receive no less than it would have received on liquidation . . . . [1]

■ The anti-modification rule of 1322(b)(2) must be read in conjunction with provisions of 1322(c) and of 1322(b)(5).

■ The language of 1322(b)(2) is unambiguous and is to be applied without resort to legislative history. *In re Davis*, 989 F.2d 208 (6th Cir.1993), *(reversed on other grounds )*. In this case, the subject liens are secured only by an interest in the Debtors' principal residence. The Plan's repayment period runs fifty-two months. The last payment due on Greentree's first mortgage debt apparently will be due beyond the last date for Plan payments. However, no evidence was introduced to show the payment period of either the first or second mortgage.

Herein, it is undisputed that a lien was created by Greentree's obtaining a security interest on the Debtors' principal residence.[2] It is also uncontested that the lien attaches to real property which is the Debtors' principal residence.

If the analysis was to stop here, Greentree would fully prevail on its objection to plan confirmation. Section 1322(c)(2), however, dictates a different result. This Code section's provisions are unambiguous. Congress amended the Bankruptcy Code in 1994, *inter alia,* to enact § 1322(c)(2). In pertinent part, that section provides:

Notwithstanding subsection (b)(2) and applicable nonbankruptcy law ——

. . .

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

■ A Debtor seeking reorganization under Chapters 11, 12 or 13 has the burden of establishing that the plan complies with the statutory requirements for confirmation. *See In re Maras,* 226 B.R. 696 (Bankr. N.D.Okla.1998). However, a party objecting to confirmation bears the burden of proof as to the objection. *In re Mendenhall,* 54 B.R. 44 (Bankr.W.D.Ark.1985); *See In re Zellner,* 827 F.2d 1222 (8th Cir.1987). Applying this burden herein, it is incumbent upon Greentree to show that the provisions of § 1322(c)(2) are not applicable. It is quite obvious that § 1322(c)(2) was enacted, effectively, to serve as an exception to the antimodification provision of § 1322(b)(2) (". . . [o]ther than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .").

The present record does not reflect where Greentree introduced any payment schedules to allow the Court to determine if the last payment on the original payment schedule of the second mortgage would become due before the date on which the final plan payment is due. It is, however, undisputed that Greentree's security interest is on the Debtors' principal residence. Further, Greentree

---

1. *Bankruptcy*, Epstein, David G., et al., West Publishing Co. (1993), § 9–15, pp. 708–709.

2. See, Amendment to Schedules dated September 24, 1998, Open-end Mortgage.

fails to acknowledge the full import of the last part of § 1322(c)(2) which provides "... the plan may provide for the payment of the claim *as modified* pursuant to § 1325(a)(5) of this title." (Emphasis added).

Section 1325(a)(5) is commonly referred to as the "cramdown" provision in Chapter 13 cases. It allows confirmation of a plan where each allowed secured claimant under the plan has either: (A) accepted the plan; or (B) will be allowed to keep the lien securing its claim and the value, as of the plan's effective date, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. Satisfaction of § 1325(a)(5)'s requirements is an integral part of § 1322(c)(2)'s requirements as mentioned above.

As noted in *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 470–471 (6th Cir. BAP 1998):

New § 1322(c)(2) is a statutory exception to the protection from modification afforded most home mortgage lenders in Chapter 13 cases by § 1322(b)(2). The introductory phrase "notwithstanding subsection (b)(2)," clearly signals the drafter's intention that the provisions of the "notwithstanding" section override conflicting provisions of any other section.... Interpreting identical "notwithstanding" language in § 1322(b)(5), the Supreme Court acknowledged that these words create a "statutory limitation [ ]" on the rights of mortgage holders in Chapter 13 cases. *Nobelman v. American Savings Bank*, 508 U.S. 324, 331, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993).

The *Eubanks* Court further noted:

The "allowed secured claim" of which § 1325(a)(5) speaks is derived through valuation and "bifurcation" in accordance with § 506(a). As the Supreme Court explained, "Section 506 ... governs the definition and treatment of secured claims, ...

[and] provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *U.S. v. Ron Pair, Inc.*, 489 U.S. 235, 238–39, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) .... The Supreme Court has recognized that undersecured claims are split by § 506(a) and then can be 'crammed down' in a Chapter 13 case by § 1325(a)(5).[3]

The 1994 enactment by Congress of § 1322(c)(2) did not constitute a legislative overruling of the Supreme Court's decision in *Nobelman*. Rather, Congress changed the class of mortgages that are protected from modification by § 1322(b)(2). *Eubanks*, at 477. Section 1322(c)(2) departs from prior law only by identifying a narrow class of short term mortgages that were protected from modification before 1994. *Eubanks*, at 478.

*The Schedules*

The Debtors' Schedule A (Real Property) lists the subject real property as being jointly owned by the Debtors. The scheduled secured claim of Greentree is in the amount of $115,900.00, with a reported current market value of $90,714.00. An exemption was claimed in the amount of $10,000.00 (See, Schedule C). Notably, on Schedule D (Creditors Holding Secured Claims), the Debtors scheduled Greentree as holding a first mortgage with a secured interest of $99,900.00, with $9,186.00 of that amount reported as an "unsecured portion". Their Schedule D also reports Greentree as the holder of a note and second mortgage on the same residence in an amount of $16,000.00, of which they claim the full amount to be unsecured.

*The Plan*

The Debtors' Plan provides that the secured claim of Greentree would receive current monthly payments outside the Plan, with arrearages being paid within the Plan

---

**3.** "Under the cramdown option [of § 1325(a)(5)(B)], the debtor is permitted to keep the property over the objection of the creditor, [provided] the creditor retains the lien securing the claim, [citation omitted], and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral [citation omitted]. The value of the allowed secured claim is governed by § 506(a) of the Code. *Associates Commercial Corporation v. Rash,* —— U.S. ——, ——––——, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997). Accord, *U.S. v. Arnold*, 878 F.2d 925, 928 (6th Cir.1989)." *Eubanks* at 471.

(See, Plan, Para. No. 3). As provided, the Plan does not specify whether this treatment is to be accorded to the first or second mortgage held by Greentree. Presumably, this Plan provision addresses Greentree's first mortgage. It does, however, provide that Greentree's second mortgage has a secured value of $0.00 (Plan Para. No. 4) and that claimants holding unsecured claims would receive a 2% dividend on a pro rata basis (Plan Para. No. 6) over a sixty (60) month period.

*Valuation*

 As of the evidentiary hearing, Greentree had filed no proofs of claim regarding either its first or second mortgage. Since it is the second mortgage which the Debtors seek to modify through a § 1325(a)(5) cram down, the Court will accept the Debtors' scheduled value of that mortgage ($16,000.00). Greentree's formal appraisal of $104,000.00 is the accepted property value. Greentree introduced an appraisal report to establish the market value of the Debtors' residence as of January 7, 1999 (Direct, R. Baudo). This appraisal, in the amount of $104,000.00, was introduced through the testimony of one Robert Baudo, a licensed realtor and appraiser. Greentree's Exhibit A contains Baudo's appraisal report prepared on the Debtors' residence three weeks prior to the evidentiary hearing. His appraisal reflected a valuation utilizing a cost approach ($97,500.00), as well as an approach using sales comparables ($104,000.00). Due to the lack of reliable rental data, an income approach was not used (Id.). Upon inquiry, Baudo testified that he chose not to use the cost approach valuation ($97,500.00), as it is too variable. (Cross–Exam., R. Baudo). Thusly, he chose the sales comparables approach and valued the property in the amount of $104,000.00. The Debtors' assertion of a $90,700.00 auditor's valuation is not supported by any credible evidence of record. Nor did the Debtors present a counter appraisal reflecting a fair market valuation different from that exhibited by Greentree. Rather, they chose to (1) rely upon their personal opinions for valuation based upon photos they took of specified areas of damage to their real property (Direct, P. and S. Petrella) (Ex. A, B, and C; (2)) copies of two noncertified deeds purporting to be neighborhood sales comparables to the value of their property (Ex. D); and what purports to be a noncertified copy of their real property tax valuation as of the second half of 1997. (Ex. E).[4] Upon comparison, Greentree's formal appraisal was more credible.[5] Not only were the Debtors unable to satisfactorily counter the formal appraisal offered by Greentree, their presentment of noncertified documents and the absence of proper witnesses to authenticate the documents, caused their tendered documentary evidence to be less persuasive. Additionally, the Debtors are not appraisers and have not undertaken a course of study in appraisal work. (Cross–Exam., S.Petrella). Sabine Petrella also stated that she is not familiar with what factors to look for in valuing a house. (Id.).

Greentree's first mortgage on the Debtors' home ($99,900.00), combined with Greentree's second mortgage on the same premises ($16,000.00), shows total liens of $115,900.00. With an accepted fair market value of $104,000.00 based upon the January 7, 1999 appraisal, this effectively leaves $4,100.00 to secure Greentree's second lien which is scheduled at $16,000.00. Although the second lien's security interest is less than the underlying claim ($16,000.00), Greentree nevertheless possesses a secured claim, although undersecured, to the extent of the value of the collateral ($4,100.00). As an undersecured creditor on its second mortgage, Greentree failed to appreciate the import of § 1322(c)(2) which provides an exception to the anti-modification language of § 1322(b).

*Conclusion*

Accordingly, the objection to plan confirmation is hereby sustained, in part, and is

---

4. Exhibit E's real property tax invoice shows only the assessed valuation for county tax purposes ($63,500.00). Such data does not show fair market valuation, and the Debtors have not demonstrated that they are one and the same. In fact, Patrick Petrella testified that he was unfamiliar with the valuation approach utilized by the county auditor's office.

5. An owner is competent to give his opinion as to the value of his property, often by stating the conclusion without stating a reason. *South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas,* 614 F.2d 1056, 1061 (5th Cir. 1980).

overruled, in part. The Debtors are hereby ordered to modify their plan forthwith in conformity with this ruling.

IT IS SO ORDERED.