**In re Malcolm L. HENNING and Betty J. Henning, Debtors.**

**No. 09–10421.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Nov. 6, 2009.

Alissa Gay, Teel, McCormack & Maroney, Jackson, TN, for Debtors.

**AMENDED [1] MEMORANDUM OPINION RE: Debtors' (1) Motion to Convert, (2) Motion to Alter or Amend Judgment Granting Motion for Relief from Automatic Stay, and (3) Motion to Stay Execution of Judgment Pending Disposition of Motion to Alter or Amend Judgment and (4) Wells Fargo's objections thereto**

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on the (1) debtors' motion to convert (docket entry 72), (2) debtors' motion to alter or amend judgment granting motion for relief from automatic stay (docket entry 73), (3) debtor's motion to stay execution of judgment pending disposition of motion to alter or amend judgment (docket entry 74) and (4) Wells Fargo's objections thereto (docket entries 85, 86 and 87) on August 13, 2009. FED. R. BANKR.P. 9014. Resolution of these matter is a core proceeding. 28 U.S.C. § 157(b)(2). The Court has reviewed the testimony from the hearing and the record as a whole. This Memorandum Opinion shall serve as the Court's findings

---

1. This opinion is being amended to correct a minor typographical error on page 14. It does not alter the court's ruling in any way.

of facts and conclusions of law. FED. R. BANKR.P. 7052.

## I. FINDINGS OF FACT

The debtors in this case, Malcolm and Betty Henning, ("debtors") filed a chapter 13 petition for bankruptcy relief on February 2, 2009. On schedule D of their petition, the debtors listed Wells Fargo Bank, N.A. ("Wells Fargo") with a claim of $476,500.00 secured by the debtors' real property at 236 Neely Station Road, in Denmark, Tennessee, ("Denmark property"). The Denmark property is the debtors' residence.

In the chapter 13 plan filed contemporaneously with their petition, the debtors proposed a monthly payment of $1,600.00 to Wells Fargo. Neither the petition nor the chapter 13 plan indicated that there was an arrearage on the Wells Fargo debt. The plan listed the Wells Fargo debt as a "home mortgage claim." The proposed plan term was 60 months. Wells Fargo filed an objection to the debtors' plan on March 11, 2009. Wells Fargo alleged that the debtor was attempting to modify the terms of its note which matured on March 10, 2007, and was entirely due and payable.

On March 25, 2009, the debtors filed an amended chapter 13 plan.[2] In addition to the $1600.00 monthly ongoing payment, this plan proposed including an "approximate" arrearage of $10,000.00. The debtors proposed to pay this claim to Wells Fargo at the rate of $189.00 per month with 5% interest.

On March 13, 2009, Wells Fargo filed a motion for relief from the automatic stay. Wells Fargo once again alleged that the note had matured on March 10, 2007, and was entirely due and payable at the time the debtors' case was filed. At the time the motion was filed, the Hennings were in

default on the note and the proposed $1600.00 plan payment would not cure the arrearage already owing on the loan.

The debtors filed a third amended plan on April 8, 2009. This plan increased the monthly payment on Wells Fargo's ongoing claim to $3,011.80 per month. It proposed the same payment on the $10,000.00 arrearage of $189.00 per month.

Wells Fargo filed an objection to the third amended plan on April 8, 2009, in which it alleged that the debtors' plan had not been proposed in good faith and was not feasible. Wells Fargo restated its assertion that the note matured on March 10, 2007, and, at the time the case was filed, was due and payable in the amount of $489,672.55. Wells Fargo alleged that by including this debt in their plan, the debtors were attempting to convert a construction loan into a 30 year fixed loan with a balloon payment due on the last day of the 59th month of the plan.

In anticipation of the hearing on Wells Fargo's motion for relief, the parties entered a joint stipulation of facts on April 29, 2009. This stipulation was amended on May 27, 2009. The facts set forth in that stipulation are as follows:

1. Malcolm Henning executed a Promissory Note in the amount of $476,500.00 in favor of Wells Fargo Bank dated March 10, 2006, and the signature appearing on Exhibit "A" attached to this Joint Stipulation of Facts is his signature.

2. Betty J. Henning and Malcolm Henning executed a Deed of Trust dated March 10, 2006 securing the payment of the Deed of Trust Note of even date with a lien against the property located at 1086 Mac Hart Road, Denmark, Ten-

---

**2.** The March 2009 plan was actually the second amended plan the debtors filed. The first amended plan was filed on February 25, 2009, but did not alter the original plan as to Wells Fargo's claim.

nessee 38391 (now known as 236 Neely Station Road, Denmark, Tennessee 38391) and the signatures appearing on the Deed of Trust attached as Exhibit "B" of the Joint Stipulation of Facts are the signatures of Betty J. Henning and Malcolm Henning. Said real property is owned by the Debtors as joint tenants with the right of survivorship and includes 56.45 acres.

3. The debt described in the Promissory Note provided funds for the construction of the Debtors' principal residence and had an original maturity date of March 10, 2007. The interest rate was a per annum floating rate equal to the lessor of (a) one-half percent (.50%) plus the Prime Commercial Lending Rate (the base interest rate on corporate loans posted by at least 75% of the thirty largest U.S. banks as reported by the Wall Street Journal, New York edition), or (b) the maximum non-usurious rate allowed under applicable law. The maturity date was extended by the Movant to December 10, 2007.

4. The entire commitment amount of $476,500.00 was disbursed by the Movant to fund the construction of the Debtors' residence and its construction was completed in February 2007. The Debtors have resided in the property since construction was completed.

5. The Debtors made periodic payments as provided for in the Promissory Note, but began to fall delinquent in their payments in about October 2007. At the time of the filing of the Debtors bankruptcy case on February 2, 2009, the Debtors owed delinquent interest in the amount of $11,494.73. Attached as Exhibit "C" is a transaction history of Debtors' loan.

6. The Debtors' former primary residence was located at 16705 Holly Way, Accokeek, MD 20607. During construction of their current residence and after completion, the Debtors marketed the

property in Maryland in order to sell it. The Debtors were unable to sell the Maryland property and have proposed to surrender it through their Third Amended Plan. The servicer of note and deed of trust secured by the Maryland property filed a motion for relief from the automatic stay in this case as to the Maryland property and the docket entry on the hearing date (April 9, 2009) indicates that the motion was granted.

7. By letter dated January 6, 2009, the Movant notified the Debtors that they were in default of their obligations contained in their construction loan agreement, Deed of Trust and Promissory Note and that they would have thirty days from the date of the letter to remit the entire principal balance and accrued interest on the loan.

8. The Debtors filed this Chapter 13 petition on February 2, 2009.

9. The Debtors' have proposed in their Third Amended plan to pay the debt owed to the Movant under the category of "Home Mortgage Claims" as a secured claim to retain its lien under 11 U.S.C. Sec. 1325(a)(5)(B). As set forth in the plan, the principal amount of the loan of $476,500.00 would be amortized over a 30 year period with 6.5%, yielding a payment of $3,011.80 a month to begin in May 2009. The plan further provides that the debt would balloon on the last day of month 59 of the plan. In addition to these plan terms, the plan provides of an approximate arrearage amount of $10,000.00 with 5% interest to receive a monthly payment of $189.00. These amounts do not include any amounts to be paid for post-petition property taxes or hazard insurance. The Chapter 13 Trustee is to be the disbursing agent for these payments.

10. The Movant filed a proof of claim in this case on April 16, 2009 that set forth

a total secured claim amount, including principal, interest and other fees and costs of $489,972.55.

11. The Debtors' amended Schedule A to their petition reflects that the Debtors' believe that the current value of their residence is $494,300.00. This amount corresponds to the real estate assessment value used by the Madison County Trustee in calculating real property taxes real property located in the county.

12. Movant engaged the services of a real estate agent, Rose Merriweather of EBCO Realty and Property Management, LLC of Jackson, TN to perform a "drive-by" evaluation of the property. This evaluation was performed on February 14, 2009 and concluded that the recommended list price of the property on an "as is" value is $345,000.00. This evaluation was performed without the benefit of inspection of the interior of the residence. Attached as Exhibit "D" is a copy of the Drive By Property Evaluation with Photos.

13. The Debtors' Schedule I—Current Income of Individual Debtor(s) reflects a combined average monthly income of $4,801.83. This amount is from Debtor Malcolm Henning's retirement income.

14. The Debtors' Schedule J—Current Expenditures of Individual Debtor(s) reflects average monthly expenses of $3,059.00, leaving a monthly net income of $1,742.83.

In addition to the stipulation, Wells Fargo filed the affidavit of Mark S. Nardi, a Wells Fargo employee, on May 28, 2009. A copy of the residential construction loan agreement was attached as an exhibit to the affidavit as was a copy of a January 3, 2006, Conventional Commitment letter from Wells Fargo to the debtors. According to the terms of the commitment letter, the debtors were required to remit at the time of the loan closing a HUD–1 statement for the sale of the Maryland property which showed net cash proceeds of $133,933.00. Mark S. Nardi's affidavit states that after construction of the Denmark property was completed, the debtors "were not able to satisfy all of the conditions to qualify for the construction loan to become a permanent 30–year fixed rate loan." (Docket entry # 55, Affidavit of Mark S. Nardi, ¶ 6).

Wells Fargo's motion for relief was granted in open court on May 28, 2009. The order granting the motion was filed with the court on July 1, 2009. The debtors filed a motion to reconsider the order granting relief from the stay on June 5, 2009; however, that motion was withdrawn in open court on June 25, 2009.

The debtors' plan was confirmed in court on June 12, 2009, with the order confirming plan being entered on June 16, 2009. Because Wells Fargo's motion for relief had been granted at the time of the confirmation hearing, Wells Fargo's objection to confirmation was shown as moot; however, because the order lifting the stay was not filed until after the plan was confirmed, the confirmation order included the monthly payments to Wells Fargo for the Denmark property. This plan required the debtor to make monthly payments of $3,011.80 to Wells Fargo for the ongoing payment and a monthly payment of $189.00 on the arrearage.[3]

On July 10, 2009, the debtors filed a motion to convert their case from chapter 13 to chapter 11. The motion did not assert any grounds for the requested re-

---

3. Once the order lifting the stay in favor of Wells Fargo was entered on July 1, 2009, the chapter 13 Trustee should have issued an amended confirmation order deleting the home mortgage payment to Wells Fargo. For some reason unbeknownst to the Court, no amended confirmation order was entered in this case.

lief. Wells Fargo filed an objection to the motion to convert on July 20, 2009, in which it alleged that the debtors would not be able to propose a chapter 11 plan that would be capable of being confirmed.

On July 13, 2009, the debtors filed a motion to alter or amend the order granting Wells Fargo relief from the automatic stay. As grounds for their motion, the debtors alleged that their motion to convert constituted new evidence for the Court to consider in ruling on Wells Fargo's motion for relief from the stay. In the alternative, the debtors asked the Court to vacate the order granting Wells Fargo's motion and reserve ruling on the motion until after the debtors' motion to convert could be heard.

Wells Fargo filed an objection to the debtors' motion to alter or amend on July 20, 2009. Wells Fargo restated the fact that it holds a fully matured construction loan on the Denmark property. Wells Fargo argued that the debtors had not presented any new evidence that they could provide Wells Fargo with adequate protection on the Denmark property. According to Wells Fargo, the only grounds the debtors could offer as support for their motion to alter or amend was their desire to convert to chapter 11 and thereby possibly modify Wells Fargo's rights in the chapter 11 plan.

The debtors also filed a "Motion to Stay Execution of Judgment Pending Disposition of Motion to Alter or Amend Judgment" on July 13, 2009. In this motion the debtors asked the Court to stay Wells Fargo from proceeding under the July 1, 2009, order granting its motion for relief from the stay until such time as the Court could rule on the debtors' motion to convert and motion to alter or amend.

Wells Fargo filed an objection to the debtors' motion to stay execution on July 20, 2009. Wells Fargo alleged that the Federal Rules of Bankruptcy Proceeding do not incorporate Federal Rule of Civil Procedure 62 and, as such, the Court was without the power to stay execution of the order granting Wells Fargo relief from the stay on the Denmark property. In the event that the Court decided to vacate or set aside the order granting relief, Wells Fargo asked the Court to require the debtors to post a bond or some other type of security in return for delaying Wells Fargo's exercise of its state law remedies.

At the hearing on these matters, the debtors alleged that there was caselaw, albeit not from the Sixth Circuit, which provides that the curing of a pre-petition default on a home mortgage does not constitute a modification of the loan and is, therefore, allowable in a chapter 11 proceeding. The debtors also argued that 11 U.S.C. § 1123(a)(5)(g) allows a chapter 11 plan to provide for the curing of any prepetition default. Wells Fargo disputed the debtors' allegations and argued that 11 U.S.C. § 1123(b)(5) specifically prohibits any modification of the Wells Fargo loan.

Malcolm Henning testified at the hearing. On direct examination, he stated that he will be able to continue making the monthly plan payment on the Denmark property without a problem. He also stated that he had spoken with another lender about refinancing the loan on the Denmark house. According to Malcolm Henning's testimony, the other lender stated that if a bankruptcy trustee could verify that the Hennings had been making their plan payments in a timely manner, the lender may be able to refinance the debt. The debtors did not present any evidence of this commitment nor did any third-party lender testify to this assertion at the hearing.

At the conclusion of the hearing on the debtors' motions, the Court took the matters under advisement and asked the parties to submit briefs on the issues. In their brief, the debtors argued that their

proposal to pay Wells Fargo's fully matured claim over the life of the plan is not an impermissible modification of Wells Fargo's claim. Instead, the debtors alleged that their plan's proposed treatment of Wells Fargo's claim was a permissible "cure of the pre-petition maturation of the debt...." The debtors relied on § 1322(b)(2), (3) and (5) and § 1322(c)(1) in support of their argument.

In its brief, Wells Fargo asserted that the debtors' reliance on § 1322(b)(2), (3) and (5) and § 1322(c)(1) is misplaced. Instead, Wells Fargo argued that § 1322(c)(1) applies to cases in which a promissory note has matured pre-petition. That Code section allows a debtor to modify the rights of a creditor secured only by a security interest in real property if the note matured pre-petition; however, § 1322(c)(2) requires the proposed modification to comply with § 1325(a)(5). Wells Fargo alleged that the debtors' plan did not comply with § 1325(a)(5)(B)(iii)(I) and, therefore, could not be modified under § 1322(c)(2).

Although the debtors' motion for conversion to chapter 11 was not addressed in its post-hearing brief, Wells Fargo addressed the issue in their brief. Wells Fargo alleged that although a debtor may be permitted to modify certain types of home mortgage claims in chapter 13, there is no such provision which allows a debtor to do so in a chapter 11 case. As a result, the debtors would not be able to modify the Wells Fargo debt in a chapter 11 plan.

The debtors filed a reply brief on September 20, 2009. In that brief, the debtors acknowledged that there is case law which finds plans which propose large balloon payments at the end of the plan fail to comply with § 1325(a)(5)(B)(iii)(I); however, the debtors urged the Court "to adopt the position that payments made over the life of the plan prior to the balloon payment are equal, and as such, the stated provision is not violated." In the alternative, the debtors argued that the Court order that this mortgage is on a thirty year track with equal monthly payments being made through the plan and the balance to survive discharge. "Debtors are allowed to sell and refinance mortgages, with court approval, in chapter 13 cases, so debtors should also be able to essentially do the same thing through a plan from the beginning." Lastly, the debtors argued that the Court order all payments made through the plan be applied to interest and the balloon payment would be applied to the principal amount of the loan. In this way, all interest payments would be equal as would the one payment made on the principal.

In addressing Wells Fargo's arguments regarding the debtors' motion to convert to chapter 11, the debtors claimed that § 1123(a)(5)(G) allows debtors to provide for the curing or waiving of any default and, thereby, reinstate a fully matured mortgage. The debtors acknowledged that there is very little case law on the topic of dealing with fully matured mortgages in a chapter 11 plan; however, the debtors argued that the Court "to keep in mind the purposes of the bankruptcy code, specifically that it was enacted to assist debtors who earnestly are attempting to organize their debts and create a method through which debtors can maintain family homes and family land...."

## II. Conclusions of Law

Wells Fargo's motion for relief from stay was granted on May 28, 2009. As a result, its objection to confirmation was noted as moot at the Hennings' confirmation hearing. Because the order lifting the stay had not been entered at the time of confirmation, the Hennings' confirmed plan included the monthly payments to Wells Fargo. As mentioned in footnote 2 supra, once the order lifting the stay was

entered with the court, the Chapter 13 Trustee should have entered an amended confirmation order deleting the home mortgage debt from the Hennings' plan.

In this case, the Hennings have sought three forms of relief. First, the Hennings have asked the Court to convert their case to chapter 11. Secondly, the Hennings have asked the Court to alter or amend the order lifting the stay in favor of Wells Fargo on the Denmark property. Third, the Hennings have asked the court to stay execution of the order lifting the stay pending disposition of the motion to alter or amend. The court will address each of these requests for relief separately.

## A. Conversion of Chapter 13 cases to Chapter 11

■ Section 1307(d) provides that:

Except as provided in subsection (e) of this section, *at any time prior to confirmation of a plan* under section 1325 of this title, on request of a party in interest or the United States Trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 or 12 of this title.

11 U.S.C. § 1307(d) (emphasis added). A debtor does not have an absolute right to convert his chapter 13 case to chapter 11. Instead, it is within the court's discretion to grant or deny a debtor's § 1307(d) request. *In re Hanson,* 282 B.R. 240, 246 (Bankr.D.Colo.2002); H.R.Rep. No. 95–595, at 428 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6384.

■ Although there are a handful of cases which discuss the factors a court should consider when addressing a § 1307(d) motion to convert, this Court could only find three decisions which discuss the temporal limitation of § 1307(d). These decisions unanimously agree that the language of the statute itself provides that a request for conversion to chapter 11

may only be made prior to confirmation. *In re Hebb,* 53 B.R. 1003, 1006 (D.C.Md. 1985); *In re Lester,* 409 B.R. 364, 372 (Bankr.W.D.Va.2009); *In re Krandell,* 311 B.R. 438, 439 (Bankr.D.Md.2004).

In analyzing a post-confirmation request for conversion of a chapter 13 case to chapter 11, the court in *In re Krandell* recognized that the language of § 1307(d):

is unambiguous. It states that conversion of a case under Chapter 13 to a case under Chapter 11, must be accomplished before confirmation of the Chapter 13 Plan. As the Supreme Court instructed in the case of *United States v. Ron Pair Enterprises, Inc.:*

The task of resolving the dispute over the meaning of [a section of the Bankruptcy Code] begins where all such inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." The language before us expresses Congress' intent . . .

*Krandell,* 311 B.R. at 439 (citing *U.S. v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). Because the language was clear, the *Krandell* court concluded that "ignoring the words 'before confirmation of a plan' violates a fundamental canon of statutory construction that 'a legislature is presumed to use no superfluous words.'" *Krandell,* 311 B.R. at 439 (citation omitted). Although the court stated there were no policy reasons it could think of for prohibiting post-confirmation conversion of chapter 13 cases to chapter 11, the *Krandell* court found it was bound by the language of § 1307(d) and had no authority to entertain a post-confirmation motion to convert a chapter 13 case to chapter 11. *Id.* at

440. ("But making laws is the business of Congress, and not the courts.").

The conclusions reached by the *Hebb, Lester,* and *Krandell* courts are further bolstered when § 1307(d) is compared to the other provisions of § 1307. Subsection (d) is the only provision of § 1307 which contains a time limitation. Section 1307(a) allows a debtor to convert a chapter 13 case to a chapter 7 one "at any time." Section 1307(b) directs a court to dismiss a chapter 13 case "[o]n request of the debtor *at any time* ...." 11 U.S.C. § 1307(b) (emphasis added). The only limitation on this provision is that the case cannot have previously been converted from chapter 7, 11 or 12. Similarly, § 1307(c) allows a party in interest or the United States Trustee to seek conversion of a chapter 13 case to chapter 7 "for cause." 11 U.S.C. § 1307(c). Although subsection (c) does not contain the "at any time" language found in subsections (a) and (b), there is no provision in the section which limits the timing of such a motion.

There are two overriding principles in statutory interpretation for purposes of this case. First, as the court in *In re Krandell* recognized, "[w]here the language of the statute is plain, the Court's sole function is to enforce the statute according to its terms." *In re Chriss–Price,* 376 B.R. 648, 651 (Bankr.M.D.Tenn.2006). When a court can "discern an unambiguous and plain meaning from the language" of a statute or rule, its "task is at an end." *In re Gibson,* 219 B.R. 195, 202 (6th Cir. BAP 1997). A court should only look beyond the statute if it is ambiguous or if "literal interpretation [of a facially clear statute] would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Vergos v. Gregg's Enters., Inc.,* 159 F.3d 989, 991 (6th Cir.1998). Secondly, " 'where Congress includes particular language in one section of a statute but omits it anoth-

er ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Keene Corp. v. U.S.,* 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (citation omitted).

Turning to the case at bar, the language of § 1307(d) is clear. A request to convert a chapter 13 case to chapter 11 must be made "before the confirmation of a plan under section 1325 ...." 11 U.S.C. § 1307(d). The Court was unable to find anything in the legislative history for § 1307 which indicates the Congressional intent in restricting conversion to chapter 11 in this manner; however, the language of the statute as a whole appears to indicate that Congress specifically intended to restrict conversion of chapter 13 cases to chapter 11 to the pre-confirmation time period. Subsections (a), (b) and (c) fail to contain any similar time limitation. The debtor can seek conversion to chapter 7 or dismissal of the chapter 13 case "at any time." 11 U.S.C. § 1307(a) and (b). Additionally, the § 1307(c) power of a party in interest or the U.S. Trustee to move for conversion of the chapter 13 case to chapter 7 is not limited to the pre-confirmation time period found in § 1307(d). The Court finds that § 1307(d)'s specific time restriction indicates a Congressional intent to only allow conversion of chapter 13 cases to chapter 11 if a request is made prior to confirmation of the plan. The Hennings' plan was confirmed on June 16, 2009. They did not file their motion to convert until July 10, 2009, almost a month after their plan was confirmed. As a result, the Court has no power to grant their request for conversion.

**B. Motion Alter or Amend Judgment Granting Relief from the Automatic Stay**

In the case at bar, the Hennings have asked the court to alter or amend the July

1, 2009, order granting Wells Fargo relief from the automatic stay. The Hennings made their motion pursuant to Federal Rule of Civil Procedure 59(e). Civil Procedure Rule 59(e) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023.

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." FED.R.CIV.P. 59(e). Pursuant to Federal Rule of Bankruptcy Procedure 9006, the ten day time period started to run on July 2, 2009. The ten-day time limit expired on July 11, 2009, which was a Saturday. Rule 9006 provides that if the time period expires on a Saturday or Sunday or a legal holiday, the period "runs until the end of the next day which is not one of the aforementioned days." FED. R. BANKR.P. 9006(a). In this case, the next day after expiration of the Rule 9023 time period was Monday, July 13, 2009. The Hennings' motion to alter or amend was filed on that day and was, therefore, timely.

■■■■ Whether to grant or deny a Rule 59(e) motion is a decision which falls soundly within the discretion of the court. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982). "A motion to alter or reconsider a judgment is an extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *U.S. ex rel. American Textile Mfrs. Institute, Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 547 (S.D.Ohio 1998). Motions to alter or amend judgments may be granted in three instances: (1) if the court has committed a clear error of law, (2) if there is newly discovered evidence, i.e. an intervening change in controlling law, or (3) "to prevent manifest injustice." *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). The party seeking reconsideration of a decision

bears the burden of proving the existence of sufficient grounds entitling them to Rule 59(e) relief. *In re J & M Salupo Development Co.*, 388 B.R. 795, 805 (6th Cir. BAP 2008); *In re Redman Oil Co., Inc.*, 100 B.R. 945, 948 (Bankr.S.D.Ohio 1989). In addition to demonstrating one of the grounds for relief under Rule 59(e), the movant must also be able to show that correcting the defect by altering or amending the judgment "will result in a different disposition of the case." *Shepard v. U.S.*, 2009 WL 3106554, *1 (E.D.Mich.2009).

■■■■ Rule 59(e) relief is only to be granted in limited circumstances and should not be invoked in an attempt to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, —— U.S. ——, 128 S.Ct. 2605, 2617, n. 5, 171 L.Ed.2d 570 (2008); *Aull v. Osborne*, 2009 WL 722605, *1 (W.D.Ky.2009); *Vanguard Transp. Sys., Inc. v. Volvo Trucks North America, Inc.*, 2006 WL 3097189, *2 (S.D.Ohio 2006). Numerous courts in the Sixth Circuit have recognized that "parties should not use [Rule 59(e) motions] to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *1704 Farmington, LLC v. City of Memphis*, 2009 WL 2065337, *2 (W.D.Tenn.2009); *Simmons v. Lake Erie Correctional Inst.*, 2009 WL 3172866, *1 (N.D.Ohio 2009). As succinctly stated by the Northern District of Ohio:

> It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or "to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been dis-

covered and offered during the initial consideration of the issue."

*McConocha v. Blue Cross and Blue Shield Mut. of Ohio,* 930 F.Supp. 1182, 1184 (N.D.Ohio 1996) (citation omitted). Additionally, Rule 59(e) is not intended to be used by an "unhappy litigant" as a means for rehashing matters a court has already decided. If the court has ruled and the movant is dissatisfied with the outcome, oftentimes an appeal is the more appropriate remedy. *Liberte Capital Group v. Capwill,* 630 F.Supp.2d 835, 838 (N.D.Ohio 2009).

▮ With regard to the "new evidence" prong of Rule 59(e), courts have routinely held that the party moving for Rule 59(e) relief must show that there is new evidence which was previously unavailable to the movant prior to entry of the original judgment. *Montgomery v. Bagley,* 581 F.3d 440, 451–52 (6th Cir. 2009); *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers, Inc.,* 190 F.3d 434, 445 (6th Cir.1999); *In re Grady,* 2009 WL 3254435, *3 (Bankr.W.D.Mich.2009); *Matter of No–Am Corp.,* 223 B.R. 512, 513 (Bankr.W.D.Mich.1998); *In re Continental Holdings, Inc.,* 170 B.R. 919, 933 (Bankr. N.D.Ohio 1994). "It is well-established ... that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment." *Emmons v. McLaughlin,* 874 F.2d 351, 358 (6th Cir. 1989). In moving for Rule 59(e) relief under the "newly discovered evidence" theory, a party may not seek relief from "what turned out to be an erroneous tactical decision prior to the entry of judgment." *Goggin Warehousing, LLC v. Morin,* 2009 WL 2996405, *2 (E.D.Tenn.2009).

▮ The "manifest injustice" contemplated by Rule 59(e) is an amorphous concept with no hard line definition. *U.S.*

*v. Jarnigan,* 2008 WL 2944902, *2 (E.D.Tenn.2008); however, in addressing the issue, courts have established various guidelines to be used on a case-by case basis. *Id.* A movant seeking Rule 59(e) relief must be able to show "an error in the trial court that is direct, obvious, and observable...." *Cummings, Inc. v. BP Products North America, Inc.,* 2009 WL 3169463, *2 (M.D.Tenn.2009). The movant must also be able to demonstrate that the underlying judgment caused them some type of serious injustice which could be avoided if the judgment were reconsidered. Essentially, the movant must be able to show that altering or amending the underlying judgment will result in a change in the outcome in their favor. *Via The Web Designs, L.L.C. v. Beauticontrol Cosmetics, Inc.,* 148 Fed.Appx. 483, 489 (6th Cir.2005); *Campbell v. Credit Bureau Systems, Inc.,* 2009 WL 3429095 (E.D.Ky. 2009). A party may not seek Rule 59(e) relief on the premise of "manifest injustice" if the only error the movant seeks to correct is a "poor strategic decision." *GenCorp.,* 178 F.3d at 834. "Generally, relief under Rule 59(e) is an 'extraordinary remedy' restricted to those circumstances in which the moving party has set forth facts or law of a 'strongly convincing nature' that indicate that the court's prior ruling should be reversed." *Cummings,* 2009 WL 3169463 at *2. Essentially, "a showing of manifest injustice requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *McDaniel v. American General Fin'l. Servs., Inc.,* 2007 WL 2084277, *2 (W.D.Tenn.2007).

▮ In their motion to alter or amend, the debtors alleged that their recently-filed motion to convert the case to chapter 11 constituted new evidence for the court

to consider. The debtors' motion cannot serve as new evidence in the context of Rule 59(e). It was a purely strategic decision made after Wells Fargo got relief from the stay on their residence. The debtors had the opportunity to file their case under chapter 11 at the time the petition was filed. They also had the option of filing a motion to convert at any time prior to confirmation of the case. The opportunity to convert did not arise after the motion lifting the stay was granted. In fact, once the debtors' plan was confirmed, the ability to convert to chapter 11 was lost by virtue of § 1307(d). So, even if the Court were to find that the order lifting the stay should be altered, the debtors would not be able to proceed with their post-confirmation motion to convert.

▮ The debtors have also alleged that the Court should alter or amend the order lifting stay "to prevent a manifest injustice." The debtors' motion does not specifically state what injustice will result from enforcement of the order lifting the stay; however, in their post-hearing brief, they argued that their proposed treatment of Wells Fargo's claim in their plan was an allowable cure of their pre-petition default and not a prohibited modification. As a result, it appears that the debtors are alleging that by being deprived of the opportunity to pay the Wells Fargo debt in their plan, they will be deprived of their home and land, and thereby suffer a manifest injustice by surrendering their house to Wells Fargo. The Court agrees that losing a family's home does indeed result in an injustice; however, whether this loss entitles the debtors to Rule 59(e) relief is another question: if the order lifting the stay was altered or amended, would the debtors be able to retain the house and thereby change the outcome of the case? In order to answer this question, the Court will discuss the debtor's ability to cure the Wells Fargo debt and retain the Denmark property in their chapter 13 case.

The Hennings' plan was confirmed on June 16, 2009. Pursuant to the confirmed plan, the debtors are to make two monthly payments to Wells Fargo: one in the amount of $3,011.80 and one in the amount of $189.00. The $189.00 payment is to be applied to the Hennings' approximate $10,000.00 pre-petition arrearage. The plan does not list a lump sum payment to Wells Fargo; however, the stipulation of facts filed on May 27, 2009, and the debtors' post-hearing briefs all state that the debtors would make a balloon payment on the mortgage on the "last day of month 59 of the plan."

▮ Generally, debtors are prohibited from modifying the rights of creditors who have a security interest in the debtor's principal residence. 11 U.S.C. § 1322(b); however, in 1994, Congress amended § 1322 to allow debtors to modify home mortgage claims in certain limited situations:

> in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). Courts have found that mortgages which fully mature prior to a debtor's bankruptcy filing fall within the purview of § 1322(c)(2). *In re Escue,* 184 B.R. 287, 292 (Bankr.M.D.Tenn.1995); *In re Sturgill,* 337 B.R. 599 (Bankr.W.D.Ky. 2006); *In re Kelly,* 283 B.R. 808 (Bankr. M.D.Fla.2002); *In re Padgett,* 273 B.R. 277, 279 (Bankr.M.D.Fla.2001); *In re Nepil,* 206 B.R. 72, 76 (Bankr.D.N.J.1997); *In re Lobue,* 189 B.R. 216 (Bankr.S.D.Fla. 1995); *In re Chang,* 185 B.R. 50 (Bankr. N.D.Ill.1995); *In re Jones,* 188 B.R. 281 (Bankr.D.Or.1995); *In re Watson* 190 B.R.

32 (Bankr.E.D.Pa.1995). If a debt secured only by the debtor's residence either matures pre-petition or will become due in full prior to conclusion of the plan, the debtor may modify the terms of the loan and pay the balance due over the life of the plan, *Escue*, 184 B.R. at 292; however, pursuant to § 1322(c)(2)'s language, any proposed modification must comply with § 1325(a)(5) of the Bankruptcy Code. *Jones*, 188 B.R. at 284.

Since its enactment, there have been a small number of courts in the Sixth Circuit which have addressed the applicability of § 1322(c)(2). In 1999, the Sixth Circuit issued an unpublished decision in the case of *City Bank & Trust Co. v. Glenn (In re Glenn)*, 1999 WL 68570 (6th Cir.1999). In *Glenn*, the debtors' chapter 13 plan provided that the home mortgage creditor would receive $287.31 per month with a balloon payment being made in the 60th month. As a result, the Sixth Circuit found that the plan complied with 1325(a)(5)'s requirement that the value of property to be distributed under the plan was not less than the value of the Bank's claim. Therefore, the Sixth Circuit held that the debtors' proposed modification of the loan was permissible under § 1322(c)(2). *Glenn*, 1999 WL 68570 at *2.

Three of the other cases in the Sixth Circuit which have dealt with the applicability of § 1322(c)(2) have all involved the bifurcation of home mortgage claims into secured and unsecured portions. In the case of *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468 (6th Cir. BAP 1998), the debtors were attempting to modify the second mortgage holder's claim on their residence. The claim was scheduled to mature prior to conclusion of the debtors' chapter 13 plan. The bankruptcy court found that § 1322(c)(2) created a narrow exception to § 1322(b)'s prohibition against modification and authorized debtors to cram down undersecured claims.

The BAP affirmed the bankruptcy court and found that " § 1322(c)(2) authorizes the Debtors' plan to 'provide·for the payment of the claim as modified pursuant to section 1325(a). . . .' " *Id.* at 471. Because § 1325(a)(5) "has always dealt only with the treatment of 'allowed secured claims' in Chapter 13 cases," the BAP found that debtors can use § 506(a) to split undersecured claims into secured and unsecured portions under § 1322(c)(2):

> It is appropriate to assume that Congress knew in 1994 that the Supreme Court had interpreted § 1325(a)(5) to include bifurcation and that Congress intended § 1325(a)(5) to have the same meaning in § 1322(c)(2) as elsewhere in the Code. The cross reference to § 1325(a)(5) in § 1322(c)(2) is an unequivocal statement of congressional intent that Chapter 13 debtors are empowered by § 1322(c)(2) to bifurcate the special real estate secured claims that this new section excepts from the modification protection in § 1322(b)(2).

*Id.* at 473. The courts in *In re Petrella*, 230 B.R. 829, 832 (Bankr.N.D.Ohio 1999) and *In re Young*, 199 B.R. 643 (Bankr. E.D.Tenn.1996) also found that debtors could use § 1322(c)(2) to bifurcate short term mortgage claims into secured and unsecured portions. *Accord, American General Finance, Inc., v. Paschen (In re Paschen)*, 296 F.3d 1203 (11th Cir.2002) (When taken together, §§ 506(a), 1322(c) and 1325(a)(5) allow a debtor to bifurcate undersecured claims into secured and unsecured parts.); *In re Arnett*, 278 B.R. 239 (S.D.Ala.2002); *But see, Witt v. United Companies Lending Corp. (In re Witt)*, 113 F.3d 508, 513 (4th Cir.1997) ("Based on all of this, we hold that § 1322(c)(2) does not permit the bifurcation of an undersecured loan into secured and unsecured claims if the only security for the loan is a lien on the debtor's principal residence.").

All of the Sixth Circuit cases dealing with § 1322(c)(2) were decided prior to enactment of BAPCPA in October 2005.[4] Prior to that time, § 1325(a)(5) provided that a court "shall confirm" a plan if, with regard to secured claims, (A) the secured creditor had accepted the plan, (B) the plan provided that the secured creditor retained their lien and the value of property to be distributed under the plan was not less than the allowed amount of the claim, or (C) the debtor surrendered the property. 11 U.S.C. § 1325(a)(5)(A), (B), (C) (1994). When the wide-ranging bankruptcy reforms went into effect in 2005, § 1325(a)(5)(B) was amended to expand the requirements for plans proposing to retain property over the objection of a secured creditor. Now, not only must a plan provide that the creditor will retain their lien and that the value of the property distributed under the plan is not less than the allowed amount of the claim, but if the plan proposes to distribute property by making periodic payments, "such payments shall be in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

Only one case in the Sixth Circuit has examined the new requirement imposed by § 1325(a)(5)(B)(iii)(I). In the case of *In re Wagner*, 342 B.R. 766 (Bankr.E.D.Tenn. 2006), the debtors proposed to make monthly installment payments to the home mortgage creditor of $728.00 for 23 months. The plan then proposed to make a balloon payment for the balance due in the 24th month. The home mortgage creditor objected to confirmation.

In addressing the case, the *Wagner* court cited to a footnote in the Sixth Circuit case of *Americredit Fin'l. Servs., Inc., v. Nichols (In re Nichols)*, 440 F.3d 850 (6th Cir.2006) in which the Court of Appeals stated:

Unlike the previous section 1325, the new language seems to require that payments made after confirmation be in equal amounts and keep pace with depreciation during the term of the plan.... If [the § 1325(a)(5)(B)(ii) and (iii)(I) and (II)] provisions ... are not met, the property must be surrendered to the creditor.

*Nichols*, 440 F.3d at 857, n. 6. Although the debtor in *Wagner* proposed equal monthly payments for 23 months, the bankruptcy court found that the balloon payment in the 24th month violated § 1325(a)(5)(B)(iii)(I) and made the debtor's plan unconfirmable:

Accordingly, in order to obtain confirmation, the Debtor's plan must provide for equal monthly payments to New Falls Corporation over the life of the plan until the lien claim is satisfied. Such treatment cannot then allow for a balloon payment in the final month, as proposed by the Debtor.

*Wagner*, 342 B.R. at 772. The majority of other courts which have addressed the issue have agreed that balloon payments do not satisfy § 1325(a)(5)(B)(iii)(I)'s "equal monthly amounts" requirement. *Hamilton v. Wells Fargo Bank (In re Hamilton)*, 401 B.R. 539, 540 (1st Cir. BAP 2009) ("By its very terms, the balloon payment is not equal to the preceding payments and therefore it is prohibited by § 1325(a)(5)(B)(iii)(I)"); *In re Gray*, 2008 WL 5068849, *4 (Bankr.D.Puerto Rico 2008) ("... the proposed balloon payment in the Debtors' amended plan violates the section 1325(a)(5)(B)(iii)(I) requirement that distributions to Doral be in 'equal monthly amounts,' and cannot be confirmed."); *In re Correale–Darling*, 2008 WL 4057141, *3 (Bankr.D.Mass.2008) ("... plans that provide for secured credi-

---

**4.** Although *Sturgill* was decided on February 14, 2006, the debtors in that case had filed their chapter 13 petition on September 4, 2005, making their case a pre-BAPCPA one.

tors to be paid periodic payments for the term of the plan with a lump sum payment in the final month violates the 'equal monthly payment' requirement of 11 U.S.C. § 1325(a)(5)(B)(iii)(I)."); *In re Schultz*, 363 B.R. 902, 906 (Bankr.E.D.Wis. 2007) (§ 1325(a)(5)(B)(iii)(I)'s "equal payment" provision applies to debts that have matured pre-petition, debts that will mature prior to conclusion of the plan, and debts that will mature after conclusion of the plan); *In re Newberry*, 2007 WL 2029312 (Bankr.D.Vt.2007); *In re Lemieux*, 347 B.R. 460 (Bankr.D.Mass.2006); *In re DeSardi*, 340 B.R. 790, 805–06 (Bankr.S.D.Tex.2006) (Although § 1325(a)(5)(B)(iii)(I) does not mandate that equal payments begin in month one of the plan, they must be equal once they begin. "There is only one period of payment, dating from the first scheduled payment on a secured claim to the date of full satisfaction. Throughout this period, insofar as periodic payments are to be made, 'such payments shall be in equal monthly amounts.'" Additionally, a lump sum payment at the beginning of a plan "would make all subsequent payments unequal to the lump sum payment." Such a provision clearly violates § 1325(a)(5)(B)(iii)(I)).

Although unpublished, the case of *In re Acosta*, 2009 WL 2849096 (Bankr.N.D.Cal. 2009) is an almost carbon copy of the proposal in the case at bar. In *Acosta*, the debtors proposed interest-only payments for four or five years with the principal being paid in one installment by refinancing or selling the property sometime between month 48 and month 60 of the chapter 13 plan. *Id.* at *2. The debtors argued that the interest payments were adequate protection payments and not "periodic payments" under § 1325(a)(5)(B)(iii)(I). The court rejected the debtors' argument and found that "payments are payments" and, as such, must comply with the "equal payment" provision in (B)(iii)(I). *Id.* at *3. The court concluded that a lump sum pay-

ment violated the requirements of § 1325(a)(5)(B)(iii)(I) and, as such, the plan could not be confirmed. *Id.*

Clearly in the case at bar, the debtors' proposed lump sum payment on the "last day of month 59 of the plan" violates § 1325(a)(3)(B)(iii)(I)'s equal payment provision under any of the cases cited by this Court. The monthly payment proposed by the plan for months 1 through 59 is $3,011.80. Any payment above and beyond that amount to be made in any month of the plan results in an unequal payment schedule which causes the plan to violate § 1325(a)(5)(B)(iii)(I). Because of this, the debtors' proposed treatment of Wells Fargo's claim cannot be allowed as a modification pursuant to § 1322(c)(2).

■ It is irrelevant to this decision that the debtors attempt to classify the $3,011.80 payments in months 1 through 59 as interest-only payments with the lump sum payment in month 59 as a payment on the principal. As the *Acosta* court recognized, a payment is a payment and any attempt by debtors to engage in "sophistry" by labeling a payment as interest-only or "adequate protection" will not save a debtor's plan from the requirements of § 1325(a)(5)(B)(iii)(I). *Acosta*, 2009 WL 2849096, at *3.

In reaching their decision, the *Acosta* court also rejected the debtor's lump sum payment for another reason:

Moreover, there is simply no way that a debtor can show that a sale or refinance which cannot be done today will be feasible in four or five years. Before the real estate market crashed, the debtors attempted to show feasibility by arguing that real estate prices always rise. Now that they have fallen, debtors argue that the market is low so it is bound to rise. Past performance is no guarantee of future results. There is no way the court can make the finding, required by

§ 1325(a)(6), that the debtors will be able to comply with the plan based on these specious arguments. In the face of objection, the court would not confirm this plan even if § 1325(a)(5)(B)(iii)(I) did not exist.

*Id.* Setting aside the balloon payment issue for a moment, the debtors in the case at bar claim that they will be able to refinance the mortgage after one or two years of a consistent payment history. For the reasons stated by the *Acosta* court, this claim cannot serve as the basis for acceptance of their proposed treatment of Wells Fargo's claim. The debtors did not present any evidence of a commitment by a possible lender to refinance the mortgage. The only proof they attempted to present was Mr. Henning's testimony that he had spoken with a lender who said it might refinance the debt if the Hennings were able to make their chapter 13 plan payments consistently. There is no way for the Court to predict what the housing market will be like in one or two years or whether the debtors will in fact be able to obtain the necessary refinancing after one or two years of consistent plan payments.

 Instead of attempting to proceed under § 1322(c)(2), the debtors have alleged that they are able to cure the default under § 1322(b)(3). This section allows a debtor to cure or waive a default in a chapter 13 plan. A debtor may propose to cure a home mortgage default under this subsection. *In re Lake,* 245 B.R. 282, 284 (Bankr.N.D.Ohio 2000); 11 U.S.C. § 1322(c)(1). Such a cure is not considered a modification of the debt which is prohibited by § 1322(b)(2). *In re Jones,* 188 B.R. 281 (Bankr.D.Or.1995); *In re Clay,* 204 B.R. 786, 790 (Bankr.N.D.Ala. 1996)As with § 1322(c)(2), cures proposed under § 1322(b)(3) for debts which have matured pre-petition must "pay off the debt in installments during the life of the plan." *In re Ibarra,* 235 B.R. 204, 209 (Bankr.D.Puerto Rico 1999); *In re French,* 174 B.R. 1 (Bankr.D.Mass.1994). Additionally, any cure proposed under § 1322(b) must fully comply with the other requirements of §§ 1322 and 1325, including § 1325(a)(5)(B)(iii)(I)'s equal payment provision. *Hamilton,* 401 B.R. at 544; *Clay,* 204 B.R. at 790; *In re Steinacher,* 283 B.R. 768, 773 (9th Cir. BAP 2002).

The only conclusion the Court can draw from the law discussing a debtor's ability to cure a matured home mortgage debt is that any proposed cure must fully comply with § 1325(a)(5). This compliance necessarily involves the equal payment provision of § 1325(a)(5)(B)(iii)(I). The debtors in this case have proposed to cure the Wells Fargo debt by making monthly payments for 59 months and a balloon payment on the last day of the 59th month. Although the debtors are permitted to cure the Wells Fargo note under either § 1322(b)(3) or (c)(2), their proposed balloon payment in the 59th month does not comply with § 1325(a)(5)(B)(iii)(I). The debtors are simply unable to cure the Wells Fargo mortgage by any means other than full payment of the debt in equal monthly installments through their plan. That treatment has not been proposed and, given the debtors' limited income, the Court feels certain in saying that the Hennings would be wholly unable to provide for full payment of the debt over the five year plan.

Because the debtors are unable to cure the Wells Fargo debt as they have proposed, setting aside the order lifting the stay would have no impact on the outcome in this case. The Court agrees that loss of their retirement home and family land is a regrettable result and does indeed work an injustice on the debtors; however, in order to alter or amend a judgment under Rule 59(e), the Court has to be able to find that alteration of the underlying judgment would bring about a different result. In

this case, it cannot. The debtors are unable to convert to a chapter 11 case and they are unable to propose a plan with a large balloon payment in this chapter 13 proceeding.

The Court finds this decision a difficult one to make because the Hennings appear to be exactly the type of debtors the bankruptcy process was designed to protect: the honest, but unfortunate ones. Were the Court able to assist them in any way in retaining their house, it would. Ideally this would be a situation in which the debtors and creditor worked together to make remaining in the house a possibility for the Hennings, but the Court cannot force Wells Fargo to provide the Hennings a place to live.