### In the Matter of MCB FINANCIAL GROUP, INC., Debtor.

### No. 10–11176–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Oct. 26, 2011.

E. Penn Nicholson, Bryan Cave Powell Goldstein, Atlanta, GA, Debtor.

Jacquelyn Louise Kneidel, Mann & Wooldridge, Newnan, GA, for Trustee.

Theo D. Mann, Mann & Wooldridge, P.C., Newnan, GA, Trustee.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is the Motion for Reconsideration, filed by Theo D. Mann (hereinafter the "Trustee"), in his capacity as the trustee of the Chapter 7 Bankruptcy Estate of MCB Financial Group, Inc. (herein after the "Debtor"). The motion arises in connection with a motion for relief from the automatic stay, filed by Independent Bankers' Bank of Florida (hereinafter "IBB"). Accordingly, this matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. See 28 U.S.C. § 157(b)(2)(G).

### BACKGROUND

In March 2008, MCB Financial Group, Inc. (hereinafter the "Debtor") obtained a revolving line of credit from IBB. The Debtor executed a promissory note (hereinafter the "Promissory Note") dated March 7, 2008 in the amount of $2,750,000 in favor of IBB. The Promissory Note states as follows:

—Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, ... Borrower will pay this loan in ... principal payments and one final principal and interest payment. . . .

—Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

—To the extent permitted by applicable law, Lender reserves the right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

The Debtor also pledged its stock in McIntosh Commercial Bank (hereinafter "MCB") to IBB to secure this indebtedness, and Movant took possession of the MCB stock certificates. By May 2008, the Debtor had fully exercised the $2,750,000 line of credit.

In July 2008, IBB became concerned about the Debtor's financial status and became aware that the Debtor was experiencing financial difficulties. IBB asked the Debtor to open a $1 million certificate of deposit with IBB. On August 29, 2008, the Debtor used $1 million of its funds to open a certificate of deposit (hereinafter the "CD") with IBB.

On December 10, 2009, the Debtor missed an interest payment of $34,756.94 on the debt owed to IBB. The Debtor and IBB discussed potential options for resolving the missed interest payment, but did not come to an agreement. The Debtor also failed to make the interest payment due on March 10, 2010. After the Debtor made the September 2009 payment, nei-

ther the Debtor nor any other party made further payments on the debt to IBB.

The Debtor and IBB executed an assignment with regard to the Debtor's rights in the CD (the "Assignment"). The Assignment is dated December 29, 2009, but it was signed by representatives of the Debtor and IBB on January 14, 2010. The Assignment grants IBB a security interest in the CD and also grants IBB a right of setoff, to the extent permitted by applicable law.[1] Additionally, the Assignment provides:

> Rights and Remedies Upon Default: Upon Default, or at any time thereafter, Lender may exercise any one or more of the following rights or remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise.
>
> Default: Default will occur if payment in full is not made immediately when due.
>
> Accelerate Indebtedness: Lender may declare indebtedness of Grantor immediately due and payable, without notice of any kind to Grantor.
>
> Application of Account Proceeds: Lender may take directly all funds in the Account and apply them to the indebtedness.

On March 17, 2010, IBB sent the Debtor a "soft demand letter," the purpose of which was to get the Debtor to pay the accrued, unpaid interest owing in the amount of $70,869.79. IBB did not demand payment in full of the entire debt. The Debtor failed to make these interest payments by March 29, 2010, the date identified in the letter from IBB. As of March 29, 2010, the Debtor owed IBB $2,830,227.43.

The Federal Deposit Insurance Corporation seized MCB, Debtor's subsidiary bank, on Friday, March 26, 2010. On Sunday, March 28, 2010, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. IBB initiated a setoff of its debt against the CD on March 29, 2010 by way of a verbal instruction, and the setoff was completed on March 30, 2010. On April 6, 2010, counsel for the Trustee communicated her concern to IBB that IBB may have liquidated the CD. IBB filed the instant motion to annul and terminate the automatic stay on April 19, 2010. Because the Trustee opposed the motion, the parties negotiated the terms of a consent order, which provided for IBB to implead the CD funds with this Court, pending the resolution of the motion. Following a period of discovery, IBB and the Trustee filed a stipulation as to certain facts and the admissibility of certain documents and requested the Court consider the legal arguments of the parties to determine whether the motion should be granted or whether factual disputes remained that would require an evidentiary hearing.

On March 31, 2011, the Court issued a written order in which it found that: 1) although IBB violated the automatic stay in setting off funds prior to obtaining relief from the stay, such action did not warrant a refusal by this Court of its request for prospective relief from the stay; 2) depending on the facts as they pertained to IBB's knowledge of the filing of the bankruptcy case, retroactive relief from the stay may not be warranted, in which case, the Trustee may be able to assert a claim under section 105 for damages arising from that stay violation; 3) under applicable Florida law, IBB had a valid right of setoff as of the date of the filing of the case; 4) IBB's right of setoff was not

---

1. The Trustee filed a complaint to avoid the transfer of the security interest granted by the Assignment as either a preferential transfer, pursuant to section 547, or a constructively fraudulent conveyance, pursuant to section 548. That matter has been stayed pending the resolution of IBB's motion for relief.

subject to section 553(a)(3); and 5) the Trustee had established no reason why IBB should not be granted prospective relief from the automatic stay. The Order, accordingly, granted IBB relief from the automatic stay and invited IBB to file a further request for retroactive annulment of the stay and the trustee to file a motion seeking damages arising from IBB's stay violation in the event the Court denied the request for retroactive annulment.

On April 7, 2011, the Trustee filed a timely motion for reconsideration of the Court's March 31st Order. In the Motion, the Trustee asserts that the Court erred in its conclusion that IBB had carried its burden of proof to establish "cause" for relief from the automatic stay. Specifically, the Trustee urges the Court to reconsider its decision that Florida law permitted IBB to setoff its debt against that owed by the Debtor.

## DISCUSSION

 Rule 59(e) of the Federal Rules of Civil Procedure grants bankruptcy courts license to alter or amend an order or a judgment after its entry. *See* FED. R.CIV.P. 59(e) (made applicable to bankruptcy proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure); *see also In re International Fibercom, Inc.,* 503 F.3d 933, 946 (9th Cir.2007) (9th Cir.2007) ("Under Rule 59(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023, a court has the discretion to reopen a judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions."). "The rule permits a court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *In re E–Z Serve Convenience Stores, Inc.,* 2004 WL 3095842 (Bankr. M.D.N.C.2004) (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d

746, 749 (7th Cir.1995)). This provision is limited, however, to the correction of any manifest errors of law or misapprehension of fact. *See In re Kellogg,* 197 F.3d 1116, 1120 (11th Cir.1999); *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993); *Lux v. Spotswood Constr. Loans,* 176 B.R. 416, 420 (E.D.Va.), *aff'd,* 43 F.3d 1467 (4th Cir.1994).

The Trustee argues against the Order on several different bases. First, the Trustee disagrees with the Court's conclusion that the parties agreed to allow IBB to setoff its entire debt, regardless of its maturity. Second, the Trustee asserts that the Court impermissibly relied on an exception to the maturity requirement applicable when the depositor is insolvent. Finally, the Trustee argues against the Court's conclusion that the debt was mature because the Promissory Note was a demand note.

As IBB noted during the course of the hearing on the Trustee's Motion to Reconsider, the Court may not alter or amend its previous order unless the Court finds that IBB was not entitled to relief from the automatic stay. In the prior order, the Court did not need to reach IBB's alternative argument that the Assignment also provided it with a valid right of setoff. If IBB had a valid right of setoff under the Assignment, IBB would be entitled to prospective relief from the automatic stay, regardless of whether the Court's prior conclusions of law regarding the maturity of the debt under state law were correct.

The Court, having considered the language of the Assignment, has determined that IBB also had a right of setoff under the Assignment. In the Assignment, IBB and the Debtor agreed that IBB could apply the CD to the debt upon the Debtor's default. There is no dispute that, on the petition date, the Debtor was in default, as defined in the Assignment, having

missed two interest payments under the terms of the Promissory Note. Therefore, IBB had a right to exercise its setoff against the entire indebtedness without making a demand for full payment or accelerating the debt.

■■■ In the prior order, the Court correctly noted that "[s]etoff is an established creditor's right to cancel out mutual debts against one another in full or in part," the purpose of setoff being "to avoid 'the absurdity of making A pay B when B owes A.'" *In re Patterson,* 967 F.2d 505, 508 (11th Cir.1992) (quoting *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913)). The Court also found that section 553(a) of the Code preserves otherwise valid setoff rights, while limiting those rights in certain ways, but does not expand or create a right of setoff when no right would have existed outside of the bankruptcy context. *See* 11 U.S.C. § 553(a); *see also Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *Patterson,* 967 F.2d at 509. The question of whether a creditor has a valid right of setoff must be determined by reference to applicable nonbankruptcy law. *Patterson,* 967 F.2d at 509. In this case, the parties agreed Florida law applies.

■■■ As the Court previously held, under Florida law the parties to a note can agree to grant a lender the right to setoff against a debt that is not mature. *See, e.g., Barsco, Inc. v. H. W.W., Inc.,* 346 So.2d 134 (Fla.Dist.Ct.App.1977) (finding the bank's right to setoff had priority over the right of a judgment creditor despite a lack of maturity because the note permitted setoff upon default and the debt was in default); *see also American Alternative Ins. Corp. v. South Florida Glazing, Inc.,* 904 So.2d 656 (Fla.App. 4 Dist.2005) (same).

In the Assignment, IBB and the Debtor agreed to allow IBB to apply the funds in the "Account" to the "indebtedness" upon "default" or at any time thereafter. The "Account" is defined as the "deposit accounts described in the Collateral Description section" of the Assignment. The Collateral Description section in turn references the CD. "Indebtedness" is defined in the Assignment to include "all principal and interest." A "default" includes the failure to make payment in full immediately when due.

■ Accordingly, under the Assignment, IBB had the right to apply the CD to payment of the principal and interest owed on the Promissory Note once the Debtor failed to make a payment when due. As there is no dispute that the Debtor missed two interest payments under the Promissory Note, the Debtor was in default and IBB had the right to apply the entire CD to the payment of the debt, prior to the commencement of the Debtor's bankruptcy case. Under Florida law, IBB had no obligation to take any affirmative action to accelerate the debt prior to exercising its remedy under the Assignment. IBB's setoff right was preserved by section 553(a), and section 506(a) rendered IBB the holder of a claim secured by the CD.

The Trustee might oppose this conclusion due to the fact that the Assignment was not made until December 29, 2009, which was less than 90 days before the Debtor filed its bankruptcy petition. For this reason, the Trustee has filed a complaint to avoid the security interest that the Debtor transferred to IBB by way of the Assignment. For the reasons stated below, however, unlike the security interest created by the Assignment, the right of setoff created by the Assignment is not subject to avoidance as a preferential transfer pursuant to section 547.

Section 553(a) provides:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561); or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).

11 U.S.C. § 553(a).

■ First, section 553(a) clearly states that, other than as stated in section 553 and sections 362 and 363, the Bankruptcy Code does not affect a creditor's setoff right. Consequently, the commencement of the case stays the exercise of the right of setoff, but no other provisions of the Code, including sections 547 or 548, can be used to avoid or otherwise destroy the right of setoff. *See Kaye v. Carlisle Tire & Wheel Co.*, 2008 WL 821521 (M.D.Tenn. 2008). This is not to say that the exercise of certain types of setoff rights are not impaired or restricted by the bankruptcy filing.

Specifically, section 553(a) provides that a creditor shall not be permitted to exercise its right of setoff postpetition if: (1) the creditor's claim is disallowed; (2) the claim was transferred to the creditor by a third party after the petition date or within 90 days of the petition date and the debtor was insolvent; or (3) "the debt owed to the debtor by such creditor was incurred by such creditor—(A) after 90 days before the date of the filing of the petition; (B) while the debtor was insolvent; and (C) for the purpose of obtaining a right of setoff against the debtor" (except for certain setoffs concerning securities contracts). 11 U.S.C. § 553(a). In this manner, the Code prevents a creditor from incurring a debt during the preference period for the purpose of obtaining a right of setoff and essentially bypassing section 547.[2] Otherwise, however, the plain language of section 553(a) provides that section 547 is not applicable to setoff rights.

■ None of the restrictions on setoff rights contained in section 553(a) apply to the right of setoff created by the Assignment. IBB's claim for over $2.8 million has not been disallowed and the Trustee has asserted no basis upon which it could be disallowed. IBB did not receive its

2. Under section 553(b), a trustee may also recover certain setoffs made during the prepetition preference period. In this case, the Trustee has not asserted that IBB actually exercised its right of setoff during the prepetition period. To the contrary, the Trustee asserts that IBB violated the automatic stay by exercising its setoff right after the commencement of the Debtor's case. Accordingly, section 553(b) does not apply.

claim by transfer from a third party during the prepetition preference period. Finally, IBB did not incur the debt owed to the Debtor within the preference period. For the reasons stated by the Court in the prior order, IBB incurred the debt owed to the Debtor in August 2008, more than 90 days prior to the petition date.

There is no question that IBB and the Debtor held mutual, prepetition debts. On the petition date, the Debtor owed IBB a debt of $2,830,227.43, and IBB owed the Debtor $1 million plus accrued interest. IBB attempted to work with the Debtor to allow it to survive in a bad economic climate by not demanding full payment of the entire debt when it had the complete right to do so. The Debtor's obligation to IBB was in default, as the Debtor had missed several interest payments. IBB had a setoff right, as provided for in the Assignment and recognized by Florida law. Section 553(a) of the Bankruptcy Code preserved that setoff right. Under section 506(a)(1), IBB is the holder of a secured claim to the extent of the amount subject to setoff, which, since the debt owed to IBB exceeded the amount of the CD and its accrued interest, is the full amount of the CD. Consequently, IBB is an undersecured creditor, with a substantial unsecured claim. No equity remains in the CD for the benefit of the Debtor's estate, and the CD is not necessary for an effective reorganization, as this is a liquidation case. Relief from the automatic stay to allow IBB to exercise its setoff right is appropriate, pursuant to section 362(d)(2). Additionally, the Court finds that the goals and policies of section 553(a) and general equitable principles are best served by granting relief to IBB. Therefore, the Court finds that granting stay relief "for cause," pursuant to section 362(d)(1), is also warranted.

■ Further, the Court finds no manifest error in its prior conclusion that, at the time of the filing, the entire debt was mature due to the demand nature of the Promissory Note. The Promissory Note expressly states that it is a demand note. The Trustee questions this conclusion because the Note also provides a payment schedule, which includes a specific final maturity date, an acceleration clause, and provisions for default interest and the collection of a late charge. Thus, the Trustee asserts, the Note has certain characteristics of a fixed payment note which would be unnecessary · if the Promissory Note were a true demand note.

■ As discussed below, under Florida law, a demand note may convert to an instrument payable at a definite time if the lender fails to make a demand by a particular date. In such cases, payment terms and additional provisions to deal with any default, such as the default provision in the Promissory Note, would be necessary to clarify "how the debt should be paid, assuming no demand is made." *Rogers v. Security Bank of Manchester,* 658 F.2d 638, 639 (8th Cir.1981); *see also Simon v. New Hampshire Sav. Bank,* 112 N.H. 372, 296 A.2d 913 (N.H.1972) ("In the face of these explicit agreements, we cannot accept the plaintiffs' contention that the provisions for installment payment of the debt converted the mortgage note from a demand note to an installment note, so that payment in full could be demanded only under the acceleration provisions of the mortgage, upon default in the payment of monthly installments."). Therefore, their inclusion is not inconsistent with a demand note that is intended to convert to an instrument payable at a definite time when no demand is made.

Florida Statute Section 673.108 provides

(1) A promise or order is "payable on demand" if it:

(a) States that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder; or (b) Does not state any time of payment. (2) A promise or order is "payable at a definite time" if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of prepayment, acceleration, extension at the option of the holder, or extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event. (3) If an instrument, payable at a fixed date, is also payable upon demand made before the fixed date, the instrument is payable on demand until the fixed date and, if demand for payment is not made before that date, becomes payable at a definite time on the fixed date.

Fla. St. § 673.1081(3).

The Promissory Note remained a demand note at the time the Debtor filed its petition, as it states that it is payable upon the lender's demand, or, if no demand is made, is payable in installment payments that were not scheduled to begin until June 10, 2010, which was prior to the Debtor's petition date. The parties included the clear statement that the "Borrower will pay this loan in full immediately upon Lender's demand" and "[i]f no demand is made, ... Borrower will pay this loan in ... principal payments and one final principal and interest payment." The Trustee's position would render this language surplusage, while IBB's characterization of the note gives effect to both the demand language and the provisions for payments and default.

As IBB made no demand, and the event that would have triggered the Promissory Note to convert to an instrument payable at a definite time was not scheduled to occur until after the Debtor filed its petition, the Court concludes that the Promissory Note remained a demand note on the petition date. Accordingly, the entire debt owed by the Debtor to IBB was mature on the petition date. For this reason, the Court finds no manifest error of law or any other reason to reconsider the prior order.

## Conclusion

For the reasons stated above, the Court's prior order is amended to incorporate the additional findings of fact and conclusions of law stated above. Further, the Court finds no basis upon which to alter or amend the holding of the prior order. Accordingly, the Trustee's Motion to Reconsider is **DENIED.**

During the course of the hearing on the Trustee's Motion, IBB made an oral request for the immediate release of the funds being held in the registry of the Court. The consent order, dated June 14, 2010, pursuant to which the parties deposited the funds into the registry of the Court provided the funds would not be released other than by the agreement of the parties or following the entry of a final order on the dispute between the parties.

The Court's March 31st Order granting IBB relief from the automatic stay, however, was not a final order within the meaning of Rule 54, as the order did not adjudicate the issue of whether the automatic stay should be annulled retroactively and the Court made no finding that there was no just reason for delay.

**IT IS FURTHER ORDERED** that the March 31st Order is amended to provide that the findings of fact, conclusions of law, and holding, as stated in the March 31st Order and amended by the instant order, constitute a final order, as the Court finds no just reason for the further delay of IBB's rights. Any other matters that re-

main pending shall be disposed of in a subsequent order.

The Clerk of Court is **DIRECTED** to release to IBB's counsel the funds originally deposited by the parties into the registry of the Court, including all accrued interest.